Newell H. SMITH, Jr., Libelant,

v.

SERVICE CONTRACTING, INC., the California Company and Rowan Drilling Company, Respondents.

No. 6198.

United States District Court E. D. Louisiana, New Orleans Division.

Dec. 4, 1964

Kierr & Gainsburgh, Samuel C. Gainsburgh, Robert G. Hebert, New Orleans, La., for libelant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald L. King, New Orleans, La., for Service Contracting, Inc.

Porteous & Johnson, Lloyd C. Melancon, New Orleans, La., for California Co.

Adams & Reese, George V. Baus, New Orleans, La., for Noble Drilling Corporation.

AINSWORTH, District Judge:

Respondent has moved for summary judgment against a seaman's libel for damages for physical injuries under the Jones Act and general maritime law. Libelant has accepted and received payments for the same accident under a compensation award made by the Deputy Commissioner for the Seventh Compensation District under the provisions of the Outer Continental Shelf Lands Act, which incorporates the remedies of the Longshoremen's and Harbor Workers' Act for workers who are injured while employed on the Outer Continental Shelf of the Gulf of Mexico.[1] Respondent's grounds are res judicata and collateral estoppel because libelant allowed the order of the Deputy Commissioner awarding him compensation benefits to become final without appealing therefrom within the 30-day period provided by statute.[2]

Libelant, an employee of respondent, was injured on December 11, 1962. The facts before us on this motion show that he was a seaman. He was issued papers as an ordinary seaman, wiper and/or messman, and was more or less permanently assigned to the motor vessel S–24, which was used as a tender by respondent in its oil-drilling operations in the Gulf of Mexico. The S–24 is subject to Coast Guard inspection and duly enrolled. It is undisputed that it is a vessel. The accident occurred in the Gulf of Mexico, a number of miles from shore. Libelant was assigned aboard the S–24 to chip, paint, assist in setting anchors, aid in the loading of cargo and in the cleaning of the vessel's holds, decks and superstructure. He ate and slept aboard the S–24.

Voluntary compensation payments were made to the injured employee by respondent's insurance carrier. On January 25, 1963, a Claims Examiner for the Bureau of Employees' Compensation, United States Department of Labor, wrote to libelant informing him that the insurance carrier had requested the Bureau to furnish libelant forms for filing a claim under the Act, which forms were enclosed. The letter also stated, "On the basis of this request it is presumed that in the event your claim is not submitted the insurance carrier may be unwilling to continue voluntary payments of compensation in your case. * * * If you desire to claim benefits under the Act, to the exclusion of any other rights of recovery you may feel you have in the matter against your employer and their insurance carrier, the forms should be completed and signed by you and filed with this office in duplicate. In the event you file the claim, in order that we may be in a position to take official action on the claim, it is requested that you submit a supplemental, signed, statement to show whether you will be in agreement to accept a formal award on the basis of continued temporary total disability. A prompt reply from you about your position in this matter will be appreciated. If you have any questions about it please feel free to writ us and we shall be glad to answer you as soon as practicable."

Thereafter, Frank Langridge, an attorney, informed the Claims Examiner by telephone that though he was not representing him claimant was the neph-

1. 43 U.S.C.A. § 1333(c); 33 U.S.C.A. §

2. 33 U.S.C.A. § 921(a).

ew of his secretary and that he wished to know the details of the case so that he could properly advise him. Mr. Langridge then stated he would have the claimant submit the claim in duplicate and that he would also submit the statement requested. Claimant then wrote to the Bureau that he would accept the award "stated in your letter dated January 25, 1963, on the basis of continued temporary total disability" and executed a standard claim form. Claimant and the insurance carrier were subsequently informed by the Claims Examiner by letter that compensation would be payable on the basis of temporary total disability and permanent partial disability in the total sum of $3,569.07. The letter requested, if the parties were in agreement with the compensation award on the basis outlined, that each should notify the office by letter.

Claimant telephoned the office of the Claims Examiner asking for an explanation of the letter of recommendation, then said that he would accept an award on the basis of that recommendation, and submitted a letter acknowledging his acceptance. On July 23, 1963, claimant again wrote to the Bureau, stating that he agreed to "accept a compensation award on the basis of 15% disability," which letter confirmed a telephone call from claimant to the Claims Examiner, and on July 31, 1963, the Deputy Commissioner executed a Compensation Order awarding him compensation in the total sum of $3,550.54. On January 10, 1964, Form US–212, United States Department of Labor, was mailed to claimant, showing certain facts found by the Deputy Commissioner, and stating, "Payment has been in accordance with Compensation Order dated 7/31/63, and our file is being closed subject to limitations of the Act. * * * If the facts are not as indicated above, kindly advise this office by personal call or letter within 10 days as to the actual facts, and your case will receive further attention."

Both the Outer Continental Shelf Lands Act and the Longshoremen's Act specifically exclude members of a crew of a vessel from their coverage.[3] Therefore, it is clear that the Deputy Commissioner had no authority under the Act to adjudicate a claim of a member of a crew of a vessel, such as libelant indisputably was in this case. Libelant did not initiate the claim before the Deputy Commissioner. The proceedings there were prompted by the voluntary payments of benefits by the employer's insurance carrier, and by the invitation of the Deputy Commissioner to libelant to obtain the benefits of an award for compensation on the suggestion that the employer's insurance carrier might be unwilling to continue voluntary payments. Nevertheless, libelant did accept the award and received payments in full. While still receiving these weekly benefits he filed this seaman's libel.

The question we must decide is whether his actions have estopped him from asserting his claim here and whether the unappealed order of the Deputy Commissioner is now res judicata as to any claim here.

■■ For purposes of this motion it is indisputable that the Deputy Commissioner has erroneously taken cognizance under the Outer Continental Shelf Lands and Longshoremen's Acts of a case involving a member of a crew of a vessel contrary to the express exclusion from coverage of these statutes. Having done so, respondent's pleas would nevertheless be valid here if the question of jurisdiction had been raised and litigated and finally determined before the Deputy Commissioner, even though erroneously. The uncontroverted affidavit of libelant, however, shows that he was never formally represented by counsel, never received any explanation of his rights under the Jones Act, was in complete ignorance of any such rights, and at no time in processing his case in the office of the Deputy Commissioner was there any formal hearing held nor was there any

---

3. 43 U.S.C.A. § 1333(c) (1); 33 U.S.C.A. § 903(a) (1).

testimony taken on the question of libelant's status as a seaman; no testimony was ever heard on the issue of jurisdiction, nor were there any contested, adversary, or contradictory proceedings of any kind before the Deputy Commissioner; during libelant's contacts with the office of the Deputy Commissioner the question of libelant's status as a seaman and his rights under the Jones Act were not explored even informally, the topic never having been touched upon by libelant, by any representative of the office of the Deputy Commissioner nor by the attorneys representing the respondent. The question of jurisdiction was not raised by the Deputy Commissioner. There is no finding by the Deputy Commissioner that libelant was in the category of workers which the Longshoremen's and Harbor Workers' Act covers or that he was not a member of a crew. The Deputy Commissioner found merely that he was a "roustabout," a term which can apply to either a shore worker or a member of a crew. Merriam-Webster's Third New International Dictionary defines the term, "roustabout," among other definitions, as a "deckhand or dock worker." The Deputy Commissioner's findings show that an investigation was made of libelant's claim but shed no light on whether this investigation pertained to coverage under the Act, and whether or not claimant was a person entitled to the benefits thereof.[4] Although the statute does not require a hearing by the Deputy Commissioner in order to make an award, his failure to make any finding as to jurisdictional facts renders ineffective respondent's pleas of estoppel and res judicata.

4. The Deputy Commissioner's award begins with the following:
"Such investigation in respect to the above entitled claim having been made as is considered necessary, and no hearing having been applied for by any interested party or considered necessary by the Deputy Commissioner, the Deputy Commissioner makes the following FINDINGS OF FACT * * *."

5. Bretsky, an interstate railroad worker, was not barred by a plea of res judicata from suing for F.E.L.A. benefits though

As we have said, no hearing was held by the Deputy Commissioner, nor was there any adversary proceeding, and the question of the Deputy Commissioner's jurisdiction to hear libelant's case was never mentioned. If jurisdiction had been questioned and litigated, the final determination of that issue, even though erroneous, would be binding on the parties and not open to collateral attack. Bretsky v. Lehigh Vallley R. R. Co., 2 Cir., 1946, 156 F.2d 594;[5] Davis v. St. Paul-Mercury Indemnity Company, 4 Cir., 1961, 294 F.2d 641.

In Mike Hooks, Inc. v. Pena, 5 Cir., 1963, 313 F.2d 696, the court denied pleas of res judicata and estoppel against a Jones Act seaman suit where the injured employee had been granted a Texas compensation act award by the Texas Industrial Accident Board, which award was not appealed from within the statutory period. The Texas act specifically excludes coverage to seamen, and the Board's stereotyped findings were that the employee was not a seaman. However, the court said "there was no real contest over this issue" and the question was not really litigated before the Texas Board. The court quoted the rule that "if the jurisdiction of a tribunal is actually brought into question in the proceeding before it, such tribunal has the power to determine its own jurisdiction, and once determined, whether right or wrong, that decision cannot ordinarily be attacked collaterally." But the court said that "[p]erhaps a different result is indicated where there is no real contest," citing in support thereof Hoffman v. New York, N. H. & H. R. Co., 2 Cir., 1934, 74

the Pennsylvania Workmen's Compensation Board had made an award under the Pennsylvania Compensation Act in his favor from which he failed to appeal within the statutory period. He had accepted voluntary Pennsylvania workmen's compensation payments but declined to accept payment after the award was made. The court was careful to point out that the Pennsylvania Board's referee "made no express finding of fact on the issue of jurisdiction over the subject matter."

F.2d 227, cert. den., 1935, 294 U.S. 715, 55 S.Ct. 513, 79 L.Ed. 1248,[6] and Bretsky v. Lehigh Valley R. R. Co., 2 Cir., 1946, 156 F.2d 594. It is obvious that there was no real contest in the present case.

■■ Should libelant prevail here he would not receive a double payment because proper credit must be given for compensation payments heretofore received. Voluntary acceptance of compensation benefits in itself does not create an estoppel. Robertson v. Donovan, E. D. La., 1963, 219 F.Supp. 364; Gahagan Const. Corporation v. Armao, 1 Cir., 1948, 165 F.2d 301, cert. den. 333 U.S. 876, 68 S.Ct. 905, 92 L.Ed. 1152 (1948).

Respondent's motion for summary judgment is therefore denied.

6. The Second Circuit found that no presumption of regularity accompanies the findings of a tribunal of limited jurisdiction, such as the Connecticut Workmen's Compensation Commission, in absence of evidence that the tribunal found jurisdictional facts; and the mere exercise of jurisdiction is therefore insufficient to infer that such facts existed.