Sun Shipbuilding and Dry Dock Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Frank Januzciewicz, Respondents.

Sun Shipbuilding and Dry Dock Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Curtis L. Fields, Respondents.

Sun Shipbuilding and Dry Dock Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Joseph C. Kimmel, Respondents.

Sun Shipbuilding and Dry Dock Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Willie Moore, Respondents.

Sun Shipbuilding and Dry Dock Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and John April, Respondents.

Argued February 8, 1979, before Judges WILKIN-SON, JR., MENCER and CRAIG, sitting as a panel of three.

*Jeffery C. Hayes*, with him *John J. Runzer, Thomas E. Zemaitis,* and *Pepper, Hamilton & Scheetz,* for petitioner.

*Joseph Lurie,* for respondents.

OPINION BY JUDGE WILKINSON, JR., March 16, 1979:

Each of the five cases which have been consolidated for appeal here involve awards of benefits by the Workmen's Compensation Appeal Board (Board) pursuant to The Pennsylvania Workmen's Compensation Act (Act)[1] for facial disfigurement resulting from five separate work-related injuries sustained by claimants while in the employ of Sun Shipbuilding and Dry Dock Company (petitioner), a company engaged in ship building and ship repair. We affirm.

The relevant findings of the referees regarding claimants' facial disfigurement are as follows: (1) a "residual scar about one-inch long over the left forehead extending into the eyebrow" (31 C.D. 1978); (2) a "one inch permanent scar above the left eyebrow" (32 C.D. 1978); (3) a "circular scar on the right cheek" (33 C.D. 1978); (4) a "residuum of a scar along the lower border of the right eye above the cheekbone approximately three-quarters of an inch long and visible from about fifteen feet" (34 C.D. 1978); and (5) "a residual oblique scar along the right side of the nose" (35 C.D. 1978). In each of the cases, the referee concluded that the claimant had suffered a serious and permanent facial disfigurement within the purview of Section 306(c)(22) of the Act,

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq.

77 P.S. §513(22). However, in 32 C.D. 1978 the referee found that claimant's remedy as a matter of law fell within the exclusive jurisdiction of federal compensation authorities pursuant to the Longshoremen's and Harbor Worker's Act[2] (hereinafter the Longshoremen's Act) and dismissed the claim petition.

Appeals were taken and consolidated for review by the Board. The decisions of the referees were upheld in all cases with respect to the factual findings of facial disfigurement and the determinations of compensability under the Act. Further, in 32 C.D. 1978 the Board held that the Longshoremen's Act did not confer exclusive jurisdiction in federal authorities.

Throughout the proceedings below, as here, the petitioner has maintained that Congress, by its 1972 amendments to the Longshoremen's Act, pre-empted the field of workmen's compensation for employees in maritime industries thereby ending the concurrent jurisdiction previously exercised by the state and federal governments. *See Calbeck v. Travelers Insurance Co.*, 370 U.S. 114 (1962).

The original Longshoremen's Act was enacted by Congress in 1927. It contained two conditions of compensability, first that the injury occur on a navigable water and second that "the recovery for the disability or death through workmen's compensation proceedings may not validly be provided by state law."[3] Thus, the 1927 Longshoremen's Act was intended only to be a gap-filler, that is, to fill the void created by the inability of states to remedy injuries occurring on navigable waters. *See generally, Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249 (1977).

---

[2] 33 U.S.C. §901 et seq.

[3] Longshoremen's Act, ch. 509, §3, 44 Stat. 1426 (1927) (current version at 33 U.S.C. §903).

The 1972 amendments to the Longshoremen's Act significantly broadened the activities of maritime workers which would be compensated under the federal scheme to include those on the landside of the water's edge and also eliminated the reference to state law in Section 903.[4] Petitioner argues that the extension of federal coverage to injuries sustained in landside activities and the elimination of the condition that recovery could be had only if "not validly provided by state law" evidence an intent by Congress to pre-empt the field of compensation for maritime workers.

It is clear that where Congress enacts a comprehensive statute which is intended to occupy the field, the Supremacy Clause of the United States Constitution requires that the states defer to the superior command of Congress. *Mamula v. United Steelworkers of America*, 409 Pa. 175, 185 A.2d 595 (1962). Where Congress has legislated in a field that the states have traditionally occupied, the resolution of a pre-emption question begins "with the assumption that the . . . powers of the States were not meant to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Co.*, 331 U.S. 218, 230 (1947). Here, it is clear that except for the deletion of the language referring to state law, the 1972 amendments to the Longshoremen's Act do not expressly preclude the exer-

---

[4] The Longshoremen's Act currently provides:

(a) Compensation shall be payable under this chapter in respect of disability or death . . . if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).

33 U.S.C. §903(a).

cise of state jurisdiction. Moreover, the legislative history of the amendments, contrary to petitioner's assertion, fails to point clearly to preemption. Rather, the purpose of the Act was declared to be two-fold: (1) to provide a "substantial increase in benefits to maritime workers so that benefits would more accurately track the workers' average wage" and (2) to extend the federal coverage "beyond the water's edge." *See Caputo, supra.*

Absent a clear expression by Congress, petitioner contends that an analysis of the statute shows an implied intent to pre-empt. The factors to be considered in determining whether pre-emption will be implied include: (1) the aim and intent of Congress; (2) the pervasiveness of the federal regulatory scheme; (3) whether the nature of the subject matter demands exclusive federal regulation to achieve national uniformity; and (4) whether state law poses an obstacle to the execution of the objective of the federal statute. *Santa Fe Elevator Corp., supra.* Petitioner's arguments with regard to these factors may be succinctly capsulized as follows: that by broadening coverage to include maritime workers' activities on land Congress created a pervasive federal regulatory scheme and that exclusive federal jurisdiction is necessary to achieve national uniformity in compensating maritime workers. However, it is clear that the extension of coverage of the Longshoremen's Act limited to land-based activities will not comprehensively cover all maritime activities covered on land; rather, courts must still determine the demarcation line of those areas "customarily used by an employer in loading, unloading, repairing, or building a vessel." 33 U.S.C. §903(a). Thus, the federal scheme is not so pervasive as to cover the entire field of a maritime worker's activity. Similarly, the nature of the subject matter (compensation of injured workers argua-

bly covered within the area of federal jurisdiction) does not demand national uniformity so as to require exclusive federal jurisdiction. Rather because state and federal jurisdiction must meet at some line near the water's edge the federal interest in providing some compensation to injured workmen would be more nearly served by continuing the concept of concurrent jurisdiction. *Accord,* G. Gilmore & C. Black, *The Law of Admiralty,* 425-26 (2d ed. 1975) ; 4 A. Larson, *Workmen's Compensation Law,* §89.70 (1978) ; *see also Newport News Shipbuilding and Dry Dock Co. v. Director, Office of Workers' Compensation Programs,* 583 F.2d 1273 (4th Cir. 1978) (where it was held that, under the 1972 amendments, the filing of a state claim did not preclude an award of benefits under the Longshoremen's Act).

Assuming, as we so hold, that the 1972 amendments to the Longshoremen's Act do not preclude the exercise of concurrent jurisdiction by the states, petitioner argues that there is insufficient competent evidence of permanent disfigurement in each of these cases because claimants failed to adduce medical evidence to establish the permanence of the scars. The record in each of these cases indicates that both the referees and the Board[5] observed the claimants' alleged disfigurements. However, the record fails to indicate that petitioner at any time during the hearings before the referees or the Board raised the issue of the permanence of the scars. We hold that scars of the type and nature presented here are *inter se* indicia of such permanence, that this issue of fact could be determined by the referee or Board on view, and that, unless the permanence of such a scar is put in issue, medical evidence need not be adduced to establish the permanence of the disfigurement. Accordingly, peti-

---

[5] As required by the rules of the Board. *See* 34 Pa. Code §111.14.

tioner's reliance on our decision in *Workmen's Compensation Appeal Board v. Pizzo,* 21 Pa. Commonwealth Ct. 370, 346 A.2d 588 (1976) where the permanence of the disfigurement was placed in issue at the referee's hearing, is misplaced.

Finally, we find no merit to petitioner's argument that the scars here were not as a matter of law as "serious" or of such a character to produce an unsightly appearance as required by Section 306(c)(22), 77 P.S. §513(22). Such questions are issues of fact for the referee and the Board to determine upon a view of the claimants. *See Workmen's Compensation Appeal Board v. Jones & Laughlin Steel Corp.,* 25 Pa. Commonwealth Ct. 542, 360 A.2d 854 (1976).

Accordingly, we will enter the following

ORDER

AND Now, March 16, 1979, the orders of the Workmen's Compensation Appeal Board, dated December 8, 1977, at Nos. A-73219, A-73210, A-73220, A-73218 and A-73217, are hereby affirmed.

Further, it is ordered that judgment be entered in favor of the claimant, Frank Januzciewicz, and against the petitioner, Sun Shipbuilding and Dry Dock Company, self-insured, in the amount of $106.00 per week beginning January 30, 1974 and continuing thereafter for a period of five weeks, together with interest at the rate of 10 per cent per annum on all deferred amounts of compensation, with attorney's fees in the amount of $160.00 to be charged against the award, all in accordance with the provisions of The Pennsylvania Workmen's Compensation Act.

Further, it is ordered that judgment be entered in favor of the claimant, Curtis L. Fields, and against the petitioner, Sun Shipbuilding and Dry Dock Company, self-insured, in the amount of $100.00 per week beginning May 2, 1973 and continuing thereafter for

a period of 15 weeks, together with interest at the rate of 10 per cent per annum on all deferred amounts of compensation with attorney's fees equal to 20 percent of the total charged against the award, all in accordance with the provisions of The Pennsylvania Workmen's Compensation Act.

Further, it is ordered that judgment be entered in favor of the claimant, Joseph C. Kimmel, and against the petitioner Sun Shipbuilding and Dry Dock Company, self-insured, in the amount of $114.00 per week beginning June 2, 1975 and continuing thereafter up to but not including July 1, 1975 and in the amount of $171.00 per week beginning July 1, 1975 and continuing thereafter up to but not including July 27, 1975, together with interest at the rate of 10 per cent per annum on all deferred amounts of compensation, with attorney's fees in the amount of $235.00 to be charged against the award, all in accordance with the provisions of The Pennsylvania Workmen's Compensation Act.

Further, it is ordered that judgment be entered in favor of the claimant, Willie Moore, and against the petitioner, Sun Shipbuilding and Dry Dock Company, self-insured, in the amount of $100.00 per week beginning May 13, 1973. and continuing thereafter for a period of eight weeks, together with interest at the rate of 10 per cent per annum on all deferred amounts of compensation, with attorney's fees in the amount of $160.00 to be charged against the award, all in accordance with the provisions of The Pennsylvania Workmen's Compensation Act.

Further, it is ordered that judgment be entered in favor of the claimant, John April, and against the petitioner, Sun Shipbuilding and Dry Dock Company, self-insured, in the amount of $114.00 per week beginning January 8, 1975 and continuing thereafter for a period of five weeks, together with interest at the rate

of 10 per cent per annum on all deferred amounts of compensation, with attorney's fees in the amount of $125.00 to be charged against the award, all in accordance with the provisions of The Pennsylvania Workmen's Compensation Act.