**John HILL, Jr., Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (SPIRIT OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 1996.

Decided Oct. 30, 1997.

Brian R. Steiner, Philadelphia, for petitioner.

Richard N. Held, Philadelphia, for respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, FRIEDMAN, FLAHERTY, and LEADBETTER, JJ.

DOYLE, Judge.

John Hill (Claimant), appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed a decision of a Workers' Compensation Judge (WCJ) to dismiss a Claim Petition for lack of subject matter jurisdiction.

The facts are not in dispute. Claimant was a deckhand on a ship, the "Spirit of Philadelphia," a tour boat that plies the navigable waters of the Delaware River. The WCJ's critical findings of fact describe Claimant's duties and injury as follows:

5. This [W]orkers' [C]ompensation Judge has reviewed the record as a whole and finds that it supports the following facts:

. . . .

c) [Claimant's duties included] . . . cleaning off the deck and hosing it down as

well as sweeping down the deck and hosing it off, cleaning the boat down, cleaning such as "household work" as in cleaning out bathrooms, and hooking up sewer and water lines when the boat was docked;

d) Claimant also described his duties as including making a trash run which would mean emptying the trash from the ship into a dumpster which was located about a block or a block and a half from where the ship was docked;

e) Claimant also described his duties as including security work while the boat was sailing the Delaware River in that he would patrol the boat making sure people behaved properly and did not lean on the rails;

f) Claimant continued to describe his duties as including cleaning the brass on the boat, vacuuming, cleaning toilets, sinks and mirrors and preparing the boat for the next cruise;

g) On July 20, 1990, Claimant, while making a trash run to the dumpster was on top of the dumpster, slipped off the dumpster and found his body wedged between the truck and the dumpster;

h) Claimant fell between six or seven feet on the ground injuring his foot and lower back;

. . . .

6. This Workers' Compensation Judge has reviewed the record as a whole and finds that Claimant's testimony establishes an insufficient nexus of land-based activities to sustain his action under the Pennsylvania Workers' Compensation Act. Claimant specifically testified that the trash run was the only land base[d] activity [that] he performed and that activity took approximately ten minutes in duration to perform. All other activities with regard to Claimant's job as a deck hand were performed on the ship, the Spirit of Philadelphia and there was no nexus between Claimant's job as a deck hand and the land. The ship, the Spirit of Philadelphia was not [a] stationary vessel but rather a cruise ship that sailed up and down the Delaware River, a navigable waterway.

Claimant's testimony fails to establish that Claimant's work was sufficiently land-based[.] [I]n this case the fall was in the concurrent jurisdiction of the Pennsylvania Workers' Compensation Act and the [f]ederal Longshoreman [sic] and Harbor Workers' Compensation Act.

7. Claimant was a deck hand on the Spirit of Philadelphia and his job duties did not include sufficient land base activities to provide him a remedy under the concurrent jurisdiction of the Federal Longshoreman and Harbor Workers' Compensation Act and the Pennsylvania Workers' Compensation Act.

8. Claimant did not sustain a work related injury within the meaning of the Pennsylvania Workers' Compensation Act.

(WCJ's Findings of Fact Nos. 5–8; Reproduced Record (R.R.) at 147a.) Based on these facts, the WCJ concluded:

1. Claimant has not sustained his burden of proving that his duties were sufficiently land-based to fit within the [con]current jurisdiction of the Longshoreman and Harbor Workers' Compensation Act and the Pennsylvania Workers' Compensation Act and thus, Claimant's Claim Petition for compensation under the Pennsylvania Workers' Compensation Act must be dismissed for lack of jurisdiction.

(WCJ's Decision at 4; R.R. at 147a.) Claimant subsequently appealed to the Board, which affirmed the decision of the WCJ.

Claimant then appealed to this Court, arguing that the Board erred when it concluded that he did not fall within the jurisdiction of the Pennsylvania Workers' Compensation Act [1] (PWCA). Specifically, Claimant argues that the PWCA is an act of territorial jurisdiction, applying to all injuries occurring within the Commonwealth of Pennsylvania, relying on Section 1 of the PWCA, which provides:

That this act shall be called and cited as The Pennsylvania Workers' Compensation Act, and *shall apply to all injuries occurring within this Commonwealth* . . . .

77 P.S. § 1 (emphasis added). Using the language of Section 1, Claimant argues that,

---

1. Act of June 2, 1915, P.L. 736, § 101, *as amended,* 77 P.S. § 1.

because his injury happened within the territorial borders of the Commonwealth, he is entitled to benefits under the PWCA. Furthermore, Claimant attempts to rebut the Board's conclusion that the Longshore and Harbor Workers' Compensation Act [2] (LHWCA) preempts the PWCA by citing *Sun Shipbuilding and Dry Dock v. Workmen's Compensation Appeal Board* [3] for the principle that the jurisdiction of the PWCA is concurrent with the LHWCA and is not preempted by it. Therefore, Claimant argues, he may still claim benefits under the PWCA. Because we disagree with Claimant's analysis and agree with the result reached by the Board, we affirm.

To resolve the issues presented, we must first examine federal maritime law and its application to the facts before us.[4]

█ The LHWCA was enacted to provide compensation to professional stevedores, and specifically excludes ship's crew members from coverage under the act. *South Chicago Coal & Dock Co. v. Bassett*, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940). Section 903 of the LHWCA provides, in relevant part:

§ 903 **Coverage**

(a) **Disability or death; injuries occurring upon navigable waters of the United States.**

Except as otherwise provided in this section, compensation shall be payable under this chapter in respect of disability or death of an *employee* . . .

33 U.S.C. § 903 (emphasis added). Employee is defined in Section 902 of the LHWCA, which provides, in relevant part:

§ 902. **Definitions**

When used in this Act—

(3) The term 'employee' means any person engaged in maritime employment, . . . **but such term does not include—**

. . . .

(G) **a master or member of a crew of any vessel**

33 U.S.C. § 902 (emphasis added). Therefore, crew members are not "employees" for the purposes of the LHWCA and are consequently excluded from LHWCA coverage. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995).

█ Claimant's job title was "deckhand," his duties were performed aboard the ship, and the facts found by the WCJ conclusively establish that Claimant was a member of the crew of the Spirit of Philadelphia. Therefore, the LHWCA does not apply.

The holding in *Sun Shipbuilding* cannot change this result. *Sun Shipbuilding* stands for the principle that states may apply workers' compensation schemes to land-based injuries that may also fall within coverage of the LHWCA. *Sun Ship*, 447 U.S. at 716, 100 S.Ct. at 2434. Because the LHWCA by its own terms does not apply to a "member of a crew of any vessel," the *Sun Shipbuilding* case is inapposite to the instant appeal.

This case is controlled, however, by a different federal statute, *viz.*, the Jones Act.[5] The Jones Act provides, in pertinent part:

That any *seaman* who shall suffer personal injury *in the course of his employment* may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such actions all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . . .

46 U.S.C.App. § 688 (emphasis added). The United States Supreme Court has held that states have no power to impose liability on employers of seamen under state workers' compensation statutes, even where the seaman is injured on land and within the territorial jurisdiction of the state sovereign.

---

2. 33 U.S.C. § 901.

3. 41 Pa.Cmwlth. 302, 398 A.2d 1111 (1979), *affirmed*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980).

4. Our review of an order of the Board is limited to determining whether constitutional rights were violated, an error of law was committed, or

whether necessary findings of fact are supported by substantial evidence. *SEPTA v. Workmen's Compensation Appeal Board (Scott)*, 136 Pa. Cmwlth.98, 582 A.2d 421 (1990), *petition for allowance of appeal denied*, 527 Pa. 658, 593 A.2d 428 (1991).

5. 46 U.S.C.App. § 688.

*Northern Coal & Dock Co. v. Strand,* 278 U.S. 142, 49 S.Ct. 88, 73 L.Ed. 232 (1928). Moreover, the Pennsylvania Supreme Court has held that federal law governs the claims of seamen. *Lloyd v. Victory Carriers, Inc.,* 402 Pa. 484, 167 A.2d 689 (1960).

Thus, the Jones Act applies, both at sea and on land, where there is: (1) a seaman, and (2) the injury occurs in the course of his employment. *O'Donnell v. Great Lakes Dredge & Dock Co.,* 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943). If Claimant was a seaman injured in the course of employment, the Jones Act will apply and preempt the PWCA, notwithstanding the fact that the injury was sustained on land.

[5] The threshold question that must be answered is whether the Claimant is a seaman under the Jones Act. The WCJ's findings of fact 5(c—f) and 6 indicate that Claimant was a member of a ship's crew and courts have held that the term, "member of the crew" is synonymous with the term "seaman" for purposes of the Jones Act. *Chandris; White v. Valley Line Co.,* 736 F.2d 304 (5th Cir.1984). Moreover, the test for seaman status is a very liberal one. A Jones Act seaman need not eat or sleep on the vessel, *Producers Drilling Co. v. Gray,* 361 F.2d 432 (5th Cir.1966), but need only have a more or less permanent connection to the vessel, *Salgado v. M.J. Rudolph Corp.,* 514 F.2d 750 (2d Cir.1975), and the term includes mariners of *any* degree. *Warner v. Goltra,* 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254 (1934).

Moreover, federal courts have applied the Jones Act based on facts very similar to the case now before us. In *Savoie v. Otto Candies, Inc.,* 692 F.2d 363 (5th Cir.1982), a *deckhand* was injured while on shore cleaning his employer's duck hunting blind and was found to be a Jones Act seaman. We therefore conclude that the Claimant was a seaman for Jones Act purposes.

We next address the question of whether the Claimant was injured "in the course of employment." When a seaman is performing the work of his employer pursuant to his employer's orders he is acting within the scope of his employment-whether or not he is aboard the ship at the time of injury. *Braen v. Pfeifer Oil Transportation Co.,* 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959). The WCJ's findings of fact 5(g) and 6 indicate that Claimant was emptying the ship's trash at the time of his injury. Claimant's testimony was accepted by the WCJ and constitutes competent and substantial evidence to establish that fact. Therefore, Claimant was injured in the course of his employment for the purpose of applying the Jones Act.

Claimant argues that "courts have held that injured seamen may seek recovery under both the Jones Act and state workers' compensation laws." (Claimant's Brief at 13.) For this proposition Claimant cites *Harney v. William M. Moore Building Corp.,* 359 F.2d 649 (2d Cir.1966); *Marceau v. Great Lakes Transit Corp.,* 146 F.2d 416 (2d Cir.), *cert. denied,* 324 U.S. 872, 65 S.Ct. 1018, 89 L.Ed. 1426 (1945); *Smith v. Service Contracting, Inc.,* 236 F.Supp. 492 (E.D.La. 1964); *Schellenger v. Zubik,* 170 F.Supp. 92 (W.D.Pa.1959); and *De Court v. Beckman Instruments, Inc.,* 32 Cal.App.3d 628, 108 Cal.Rptr. 109 (1973). However, none of these cases stand for the principle for which Claimant cites them; in fact, a close reading of these opinions reveals that the cases actually stand for a contrary proposition.

The plaintiff in *Harney* was working on a barge anchored in the Harlem River. He fell off the barge and was injured. Subsequently, Harney sought and was granted workers' compensation benefits in New York State. He also brought a Jones Act negligence claim against his employer in the federal district court. That court dismissed the Jones Act claim on the ground that the plaintiff was covered exclusively by the compensation provisions of the New York Compensation Law *or* the federal Longshoremen's and Harbor Workers' Compensation Act, theorizing that the facts of the case were in the "twilight zone" (an area where *either* the LHWCA or state compensation laws apply) and "a state statute will be permitted to have force and effect despite the fact that it may deal with a maritime injury." *Harney,* 359 F.2d at 651.

The Court of Appeals however, reversed and remanded the case to the district court but held only that the issue of whether the plaintiff was a crewman "is a question of fact, or a mixed question of law and fact" and that

the issue should first be submitted to a jury. Further, the fact that the plaintiff had accepted state workers' compensation benefits without any administrative proceedings or an award would not preclude a finding in a subsequent Jones Act proceeding that the plaintiff was indeed a "seaman." The procedural setting in this present appeal is, of course, not similar at all to those in *Harney,* and *Harney* is not authority for the principle that the claimant/plaintiff has an election of remedies between workers' compensation (under either federal or state law) and a cause of action in negligence under the Jones Act. To the contrary, the court stated:

> Jurisdiction to award [workers'] compensation and Jones Act jurisdiction, however, do not overlap. The doctrines of maritime but local and the twilight zone, which apply to cases of competing compensation schemes (the [LHWCA], and state acts), have not been extended to cases involving the Jones Act and compensation scheme[s].

*Harney,* 359 F.2d at 651. Accordingly, *Harney* stands for the proposition that **federal jurisdiction over maritime injuries under the Jones Act is exclusive.**

In *Marceau,* a defendant in a Jones Act suit filed in the federal district court raised an accord and satisfaction defense by pointing out the fact that the plaintiff had received a state workers' compensation award. The Court of Appeals noted that the award was on appeal and that no monies had yet been paid, and it therefore rejected the defendant's accord and satisfaction defense. The *Marceau* court did not hold that an injured seamen may seek recovery under both the Jones Act and state workers' compensation laws. To the contrary, the court pointed out that the Supreme Court decision in *O'Donnell v. Great Lakes Dredge & Dock Co.,* 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943), "extends the protection of the Jones Act to seamen who are injured through the negligence of their employers while in the course of their employment even though the injuries occur on land." *Marceau,* 146 F.2d at 418.

*Smith* involved Jones Act litigation between a claimant and his employer and the issue of whether claimant's acceptance of a previous award under the Outer Continental Shelf Land Act [6] barred his Jones Act claim. In dismissing the employer's motion for summary judgment, the federal district court held that an administrative determination awarding benefits under the Continental Shelf Act did not have the effect of res judicata upon the issue of the claimant's status as a seaman under the Jones Act. The court observed that at no time in the administrative process was there any formal hearing or testimony "on the question of libelant's status as a seaman." *Id.* at 495. Moreover, the court further noted that, even if the claimant later prevailed in a trial on that issue, "he would not receive a double payment because proper credit must be given for compensation payments heretofore received" and that "[v]oluntary acceptance of compensation benefits in itself does not create an estoppel." *Id.*

*Schellenger* involved an attempt by a defendant in a Jones Act suit to use a PWCA award as a defense. The district court said:

> The Circuit, invoking the views of the Supreme Court of the United States, and recognizing the rights and immunities of seamen, has noted with foreboding[,] efforts to bring seamen, who under federal admiralty acts are entitled to sue for compensation for injuries in federal courts, within the scope of state compensation acts. Such efforts are unconstitutional as destroying the characteristic features of general maritime law, contravening its essential purpose, encroaching upon the paramount power of the Congress to enact national maritime laws and invading the jurisdiction which Congress has conferred upon courts of admiralty.

*Schellenger,* 170 F.Supp. at 93. Accordingly, *Schellenger* does not support Claimant's argument either.

Finally, *De Court* also fails to support the proposition that courts have held that injured seaman may seek recovery under both the Jones Act and state workers' compensation laws. In *De Court* the Court of Appeals of California recognized that "the California Supreme Court decided [that] the remedies provided by the workmen's compensation law are not available concurrently with the remedies available under the Jones Act." *De*

---

6. 43 U.S.C. § 1333.

*Court*, 32 Cal.App.3d at 633, 108 Cal.Rptr. 109.

Accordingly, because Claimant is a seaman, injured in the course of his employment, the Jones Act provides his exclusive remedy, preempting the PWCA. *Northern Coal.*[7] Accordingly, Claimant's petition was properly dismissed for lack of subject matter jurisdiction.

Order affirmed.

### ORDER

**AND NOW,** October 30, 1997, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

FRIEDMAN, Judge, dissenting.

Unlike the majority, I do not believe that the Jones Act, 46 U.S.C.App. § 688, should impact on our decision here; therefore, I respectfully dissent.

John Hill, Jr. (Claimant) is not pursuing a remedy under the Jones Act,[1] nor is he claiming benefits under the Longshoreman and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950;[2] rather, Claimant seeks workers' compensation under the Pennsylvania Workers' Compensation Act (PWCA).[3] Thus, I believe that the issue presented here involves the question of concurrent jurisdiction under both the PWCA and the LHWCA.[4] To resolve this issue, we need only determine whether the LHWCA supplants the PWCA or shares concurrent jurisdiction with the PWCA as a source of compensation benefits to Claimant, a deck hand on a ship which cruises on the Delaware River, for an injury sustained while he was emptying the ship's trash on land at a site over a block away from the docked ship.

Faced with this question, we would need to analyze the law regarding overlapping state and federal jurisdiction in the context of compensation for maritime workers. This law has undergone a lengthy development and, as an aid to understanding the issue, I provide a brief synopsis of this evolution beginning in 1917, when the United States Supreme Court, in *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), declared that states were constitutionally barred from applying their compensation systems to maritime injuries because to do so would interfere with the federal policy of uniformity in maritime law.

The Court subsequently has narrowed the *Jensen* doctrine by identifying circumstances which are maritime yet "local in character" and, therefore, amenable to relief under state law. In 1927, Congress enacted the LHWCA, which extended protection to maritime workers excluded under *Jensen* by providing compensation for an injury *occurring on navigable waters if* recovery could not validly be provided by state law. However, because the boundary between state and federal jurisdiction was unclear, claimants often faced harsh consequences as a result of selecting the wrong forum in which to bring their action. Consequently, in *Davis v. Department of Labor and Industries of Wash-*

---

7. "We think it necessarily follows from former decisions that by the [Jones] Act-a measure of general application-Congress provided a method under which [a claimant] might secure damages ... and that no state statute can provide any other or different one." *Northern Coal,* 278 U.S. at 147, 49 S.Ct. at 90.

1. The Jones Act, enacted in 1920, provides a cause of action *in negligence* for any seaman injured in the course of his employment. Claimant here does not seek damages in a personal injury action; rather, he seeks workers' compensation benefits.

2. The LHWCA, enacted in 1927 and amended in 1972, provides *workers' compensation* for injury to a broad range of land-based maritime workers, but explicitly excludes from its coverage "a master or member of a crew of any vessel." 33

U.S.C. § 902(3)(G). Because a member of a crew has been construed as the equivalent of a Jones Act "seaman," the Jones Act and the LHWCA are mutually exclusive. *McDermott International, Inc. v. Wilander,* 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991).

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

4. This question arises because, while the PWCA applies "to all injuries occurring within this Commonwealth ...," section 101 of the PWCA, 77 P.S. § 1, the LHWCA applies to injuries "occurring on the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal ... or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling or building a vessel)." 33 U.S.C. § 903(a).

ington, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), the Court established a scheme of concurrent jurisdiction, creating a "twilight zone" wherein workers injured *in navigable waters* but performing *duties which were not traditionally maritime* would be entitled to claim benefits under either the LHWCA or their state workmen's compensation program.[5]

In *Flowers v. Travelers Insurance Co.*, 258 F.2d 220 (5th Cir.1958), *cert. denied*, 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582 (1959), a welder, injured while making repairs on an ocean-going tanker floating in dry-dock, brought an action under the LHWCA. The court harkened back to *Jensen* and held that where, *at the time of injury*, a claimant was *upon navigable waters* and involved in *work which was typically maritime*, he was within the exclusive coverage of the LHWCA. The fact that the claimant spent 80% of his time performing non-maritime work on shore was deemed irrelevant where the situation at the time of injury in no way fell within the twilight zone of coverage.

In *Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), the Court further overlapped state and federal coverage for maritime workers by holding that, while federal and state jurisdiction would remain concurrent, the LHWCA would reach all cases of injury sustained *on navigable waters* whether or not they were within the constitutional reach of state law. However, injuries which were suffered *beyond navigable waters* still were compensable only by state law.

In 1972, Congress amended the LHWCA and extended its coverage landward. Believing that there should not be any disparity between benefits payable to injured maritime employees based solely on which side of the water's edge the accident occurred, Congress sought to upgrade benefits to the federal minimum by broadening the activities of maritime workers which would be compensable under the federal scheme to include those performed landside. *Sun Shipbuilding and Dry Dock Co. v. Workmen's Compensation Appeal Board*, 41 Pa.Cmwlth. 302, 398 A.2d 1111 (1979), *aff'd sub nom. Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). However, concurrent jurisdiction with state law was retained where that law could constitutionally operate.[6] Thus, the 1972 amendments did not preempt any state remedies, but, rather, supplemented that coverage with federal remedies. *Sun Ship*.[7]

This brings me to *Wellsville Terminals Co. v. Workmen's Compensation Appeal Board (Zacharias)*, 148 Pa.Cmwlth. 197, 610 A.2d 520 (1992) (*Wellsville I*), relied on by the Board here.[8] In that case, the claimant was injured while making repairs to a barge floating in the Ohio River and sought benefits under the PWCA. This court affirmed the grant of benefits. Relying on *Davis* and more particularly, on *Sun Ship*, we held that because the barge was tethered to the shore and because the claimant drove co-workers to work each day, his activities were sufficiently land-based to fall within the concurrent jurisdiction of the LHWCA and the

---

5. In *Davis*, the widow of a workman who had drowned in a navigable river while working for a construction company sought benefits under the workmen's compensation law of the state of Washington. The Washington Supreme Court held that the state could not make an award under its state law because jurisdiction was exclusively federal under the LHWCA. The United States Supreme Court reversed, holding that there was no constitutional bar to recovery under state law in the twilight zone where state law appeared to cover the employee.

6. In *Sun Shipbuilding*, we affirmed the grant of state workmen's compensation benefits to claimants injured on land while performing shipbuilding and repair work, holding that the 1972 amendments to the LHWCA which extended federal coverage landward did not intend to preclude concurrent jurisdiction by the states.

7. *Sun Ship* involved ship repairmen injured on land while involved in shipbuilding and repair activities. In *Sun Ship*, the United States Supreme Court held that a state may apply its workers' compensation scheme to *land-based* injuries which fall within the coverage of the LHWCA as amended in 1972.

8. I note that the majority states that it agrees with the result reached by the Board. (Majority op. at 77.) I find this statement perplexing. The Board, in affirming the WCJ, cited *Wellsville I*, based on which the Board concluded that, as a maritime worker on or near navigable waters, Claimant was covered exclusively by the LHWCA. *Wellsville I* subsequently was reversed by our supreme court in *Wellsville Terminals Co. v. Workmen's Compensation Appeal Board (Zacharias)*, 534 Pa. 333, 632 A.2d 1305 (1993)

PWCA. Our supreme court reversed in *Wellsville Terminals Co. v. Workmen's Compensation Appeal Board (Zacharias)*, 534 Pa. 333, 632 A.2d 1305 (1993) (*Wellsville II*), reasoning that we were wrong to rely on *Sun Ship*, a case which was dependent on the LHWCA's post–1972 expansion *onto land.* Instead, the court relied on *Flowers*, holding that because the claimant in *Wellsville II*, like the claimant in *Flowers*, received his injury on navigable waters while engaged in essential repairs to the vessel, a traditional maritime activity, he did not fall within the twilight zone of concurrent jurisdiction and his remedy was exclusively with the LHWCA.

I believe that this case is governed by *Flowers* and *Wellsville II* in that it represents the other side of the *Flowers/Wellsville II* coin. The claimants in both those cases, at the time of injury, were upon navigable waters involved in work which was typically maritime, whereas Claimant here was injured on dry land while emptying trash, a non-maritime activity.[9] Although I acknowledge that the vast majority of Claimant's work was performed on board the ship itself, the time element is not determinative of the issue here; rather, it is the *type of work* that the claimant is performing and the claimant's *location at the time of the injury* which weigh most heavily in this analysis. *Flowers; Wellsville II.*

(*Wellsville II*). Thus, the Board, relying on a case which had been reversed, concluded that Claimant was covered under the LHWCA, whereas the majority obviously concludes that the LHWCA does not apply. (Majority op. at 77.)

Perhaps the majority is confused because the Board was confused as well. In its motion to dismiss, Employer argued that Claimant could not be covered *either* by the LHWCA *or* by the PWCA because he was a "seaman" within the meaning of the Jones Act. (R.R. at 7a.) In its brief, Employer maintains that the WCJ, in fact, determined that Claimant's activities classified him as a seaman. (*See* Respondent's brief at 7, 9, and 11.) The WCAB also adopts this position. (WCAB op. at 3; R.R. at 154a.) However, both are incorrect; the WCJ made no finding with regard to whether Claimant was a "seaman" within the meaning of the Jones Act. Indeed, the WCJ could not have made such a determination since the issue of seaman status under the Jones Act is a question of fact for a jury in an action brought pursuant to that act. In fact, the WCJ made no reference to the Jones Act in his opinion

In *Flowers* and *Wellsville II*, the courts concluded that any claimant injured while performing traditional maritime work on navigable waters could recover only under the LHWCA; the court in *Flowers* was not swayed by the fact that the claimant spent 80% of his time performing non-maritime work on land. Thus, it follows that where, as here, a claimant is injured on land while performing work which is not traditionally maritime, he may seek a remedy under the state system, even though he spends much of his time performing maritime, sea-based activities.

Based on this reasoning, I would reverse the order of the Board dismissing the case for lack of jurisdiction and remand the case for the WCJ to make further findings and conclusions relating to the merits of the claim.

and referred only to Claimant's failure to fit within the concurrent jurisdiction of the PWCA and the LHWCA. (R.R. at 145a–48a.)

From a reading of the WCAB's opinion, it appears that the WCAB misconstrued the issue as Employer presented it. In that opinion, the WCAB states that "[Employer] filed an answer denying Claimant's allegations and raising the defense of jurisdiction, to wit, *Claimant's job duties classify him as a 'seaman' and as such is governed by the [LHWCA]."* (WCAB op. at 2; R.R. at 153a) (emphasis added). As stated previously, this is *not* what Employer argues and, in fact, appears to be a legal impossibility because the Jones Act, which covers seamen, and the LHWCA, which covers other land-based maritime workers, are mutually exclusive. In fact, Employer argued that, because Claimant was a "seaman," he was *not* governed by the LHWCA. (R.R. at 7a.)

9.  In fact, a review of Claimant's duties prompted the WCJ to find that Claimant performed mostly household work or security work. (WCJ's Findings of Fact, c and e; R.R. at 146a.)