Orvner D. BIGGS, Appellant,

v.

NORFOLK DREDGING COMPANY,
Appellee.

Samuel J. CLOWERS, Appellant,

v.

TIDEWATER–RAYMOND–KIEWIT,
Appellee.

Nos. 10053, 10054.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 7, 1965.

Decided March 31, 1966.

Ralph Rabinowitz, Norfolk, Va. (Sidney H. Kelsey, Norfolk, Va., on brief), for appellants.

Guilford D. Ware, Norfolk, Va. (Michael A. O'Brien and Baird, Crenshaw & Ware, Norfolk, Va., on brief), for appellee in No. 10,053.

´ Roy L. Sykes, Norfolk, Va. (Jett, Sykes & Berkley, Norfolk, Va., on brief), for appellee in No. 10,054.

Before BRYAN and BELL, Circuit Judges, and MAXWELL, District Judge.

ALBERT V. BRYAN, Circuit Judge:

These two appeals have a common issue: whether an employee injured aboard his employer's ship on navigable waters may, on the allegation that *he is a seaman,* sue his employer for damages upon the Jones Act[1] or the general maritime law after deliberately obtaining compensation under Virginia's industrial statute[2] or under the Longshoremen's and Harbor Workers' Act[3], on the allegation that *he is not a seaman.*

The District Court, on motions for summary judgment, dismissed the appellant-employees' separate actions at law against their respective employers (appellees) for injuries ascribed to the negligence of the employers and the unseaworthiness of the ships. Decision was grounded on estoppel of the claimants to sue by reason of their prior pursuit and acceptance of compensation. The term "compensation" is used herein as referring to the benefits provided by the State and Federal laws just mentioned. Footnotes 2 and 3 supra.

We reverse. In our judgment, each of the complaints alleges circumstances indicating prima facie that the plaintiff was in truth performing sea-

[1]. 46 U.S.C. § 688.

[2]. Code of Va. 1950 §§ 65–1 et seq.

[3]. 33 U.S.C. § 901 et seq.

man's duties, and so under the doctrine of Reed v. The S. S. Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), entitled to prosecute maritime remedies notwithstanding prior procurement of compensation. Moreover, summary judgment was inappropriate, we think, because the supporting papers did not exclude the existence of a genuine issue on the decisive fact of whether the plaintiffs were seamen, or acting as seamen, and so possessed of general maritime or Jones Act rights and remedies.

### No. 10,053

The appellant, Orvner D. Biggs, was employed by the Norfolk Dredging Company operating a marine equipment yard along the Elizabeth River in Virginia. He was listed on the payroll records as a temporary yard helper. The company was then engaged in raising and reassemblying a pipeline submerged in the river. Several barges were ranged along the shipyard's dock to receive the pipe. Biggs, who held a Coast Guard certificate as a seaman, had on occasion handled the lines and assisted in maneuvering the barges. One end of the pipeline rested on a pontoon made fast to the dock. Alongside the pontoon in navigable waters was a derrick barge, the crane of which picked up pipe sections from the pontoon and put them in position for proper placement. In one of these movements, on July 24, 1961, a pipe section struck and injured Biggs as he worked on the derrick barge.

After the injury the employer's insurance carrier voluntarily and immediately began paying Biggs compensation in accordance with the Virginia compensation rate. When these payments stopped, Biggs retained counsel to have them resumed. A hearing was held before the Virginia Industrial Commission solely on the issue of Biggs' physical condition. It resulted in a reinstatement of compensation. Thereafter his counsel, familiar with the requisites of the Commission's jurisdiction as well as with seamen's rights and remedies, instituted the present action alleging that Biggs when hurt was working as a seaman. The Commis-

sion lacks jurisdiction, it is agreed, if the claimant's injury arose in the course of employment as a seaman. See Kellogg & Sons, Inc. v. Hicks, 285 U.S. 502, 513, 52 S.Ct. 450, 76 L.Ed. 903 (1932); Southern Pacific Co. v. Jensen, 244 U.S. 205, 218, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

The District Court in dismissing by summary judgment concluded that in seeking and obtaining redress by way of compensation, Biggs precluded himself from suing for relief as a seaman or as one performing a seaman's traditional work.

### No. 10,054

Samuel J. Clowers was employed by Tidewater-Raymond-Kiewit which was constructing the Chesapeake Bay Bridge-Tunnel, extending from the end of Virginia's eastern peninsula southwardly across the Bay to its southern shore. Employees were transported daily to and fro the project upon the employer's vessel, the Diane. In debarking on the morning of November 24, 1962, Clowers' foot was caught between the side of the boat and the bridge piling on which hung a rope ladder to be used in getting atop the structure. As he stepped from the deck, the vessel rose with the surge of the water and crushed his foot.

While Clowers was hired and classified as a carpenter, he performed little or no labor of that type. Principally he worked upon a large unit of equipment, known as the "monster", which placed caps upon the piles in the bridge trestle. Among its operations, the "monster" by crane lifted steel beams from barges alongside and placed them where needed. At times Clowers was engaged variously aboard these barges or on another delivering the caps. At other times he acted as a survey rodman on still another ship.

After the injury the employer's insurance carrier voluntarily and immediately began paying Clowers compensation under the Virginia statute. Thereafter Clowers obtained counsel and filed an application for benefits under the Longshoremen's and Harbor Workers' Compensation Act, supra, 33 U.S.C. § 901 et seq. A hearing under the Act was neces-

sitated by the insurance carrier's insistence that the plaintiff's sole remedy was under the State statute. The Commissioner, overruling the carrier's point, awarded, and Clowers accepted, compensation based on the Federal Act.

In his present suit Clowers alleges that he was a seaman or performing a seaman's duties. The first hearing before the District Court was on the employer's motion to dismiss because Clowers, having elected to claim compensation as a non-seaman within the Longshoremen's Act, was barred from suing for damages. After argument the judge announced he would consider the record of the proceeding under the Longshoremen's Act and, treating the motion as for summary judgment, he dismissed the action. At this time claimant's counsel produced a letter he had written to the Commissioner when he filed the claim under the Act, stating that this claim "should not in any way be construed as a waiver, a [sic] estoppel, or any relinquishment whatever of Samuel James Clowers' rights as a seaman under the Jones Act * * * and the General Admiralty Law. * * *" The letter was introduced in response to the Court's strictures upon the attorney's prosecuting a suit in conflict with his position before the Commissioner.

The determinative factors in Reed v. The S.S. Yaka, supra, 373 U.S. 410, 83 S.Ct. 1349 are present in each case here. The Supreme Court's ruling was this: if an employer is the permanent or pro hac vice owner of the ship on which his employee is injured while working as a longshoreman, then the employee may sue his employer under the general maritime law for damages, notwithstanding that previously the employee has received compensation.

In *Yaka* a longshoreman libeled the ship on which he was employed for damages for personal injuries suffered in his work aboard. The predicate of the claim was the vessel's unseaworthiness.

His employer, the ship's bareboat charterer—or her owner pro hac vice—intervened to defend the suit. The defense was that as the libelant and the charterer were, respectively, employee and employer, the injured man's sole remedy was under the Longshoremen's and Harbor Workers' Compensation Act, supra, 33 U.S.C. § 901 et seq. Although the opinion noted, 373 U.S. at 412, 83 S.Ct. at 1351, that "compensation liability of an employer under the Act is exclusive and in place of all other liability on his part",[4] and although compensation was there available—and availed of [5]—the Court held the longshoreman could still sue to vindicate his maritime rights.

"[T]he only question", said the Court, "is whether the Longshoremen's Act prevents recovery by petitioner for Pan-Atlantic's [the charterer's] breach of its warranty of seaworthiness." 373 U.S. at 413, 83 S.Ct. at 1352.

Further, at 413, 83 S.Ct. at 1352:

"In Seas Shipping Co. v. Sieracki, 328 U.S. 85 [66 S.Ct. 872, 90 L.Ed. 1099] (1946), we held that a shipowner's warranty of seaworthiness extended to a longshoreman injured while loading the ship, even though the longshoreman was employed by an independent contractor. In doing so, we noted particularly the hazards of marine service, the helplessness of the men to ward off the perils of unseaworthiness, the harshness of forcing them to shoulder their losses alone, and the broad range of the 'humanitarian policy' of the doctrine of seaworthiness, which we held not to depend upon any kind of contract. 328 U.S., at 93–95 [66 S.Ct., at 876–877]. We further held that the Longshoremen's and Harbor Workers' Act was not intended to take away from longshoremen the traditional remedies of the sea, so that recovery for unseaworthiness could be had notwithstanding the availability of compensation."

---

4. See 33 U.S.C. § 905.

5. See Record, vol. 141, No. 509, p. 24a, Reed v. The S. S. Yaka, 373 U.S. 410, 83 S.Ct. 1349 (1963).

Again, at 415, 83 S.Ct. at 1353:

"In the light of this whole body of law, statutory and decisional, only blind adherence to the superficial meaning of a statute could prompt us to ignore the fact that Pan-Atlantic was not only an employer of longshoremen but was also a bareboat charterer and operator of a ship and, as such, was charged with the traditional, absolute, and nondelegable obligation of seaworthiness which it should not be permitted to avoid."

Like reasoning applies to the instant cases. Each plaintiff now pleads himself a seaman, or alternatively as one doing a seaman's job, and thereby entitled to sue for unseaworthiness. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 99, 66 S.Ct. 872 (1946). It is now elementary that all who do traditional seaman's work are owed, and may sue on, the warranty of seaworthiness. See, e. g., Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Ross v. S. S. Zeeland, 240 F.2d 820 (4 Cir. 1957); Lawlor v. Socony-Vacuum Oil Co., 275 F.2d 599, 84 A.L.R.2d 613 (2 Cir. 1960), cert. den., 363 U.S. 844, 80 S.Ct. 1614, 4 L.Ed.2d 1728. The present plaintiffs may also be armed in like fashion.

Nevertheless, we do not understand Yaka so to expand Sieracki as to warrant a Jones Act suit by a longshoreman. Hertel v. American Export Lines, Inc., 225 F.Supp. 703, 705 (S.D.N.Y. 1964) with opinion by Judge Weinfeld. However, if the claimant is not simply substituting in a single phase of a seaman's duties, but is a member of the crew, we see no reason why under Yaka, despite receipt of compensation, he may not also sue his employer on the Jones Act.

In Yaka compensation was not only available but the libelant was receiving payments—apparently made voluntarily—under the Longshoremen's Act. The cases before us differ from Yaka in that the plaintiffs here had on the advice of counsel filed applications for compensation. Notwithstanding, we believe Yaka tolerates no distinction between the mere availability or voluntary payment of compensation and a positive claim for it.

True, that decision allowed suit where compensation had not been affirmatively sought. However, not to allow suit where compensation has been sought would discourage the spontaneous initiation of payments. Under such a policy the employer who immediately and voluntarily begins compensation payments would be subject to suit; the employer who forces his employee to seek compensation would be immune from suit. Certainly Yaka did not contemplate this result. Its tenet is clear that compensation statutes are not intended to deprive a seaman or his replacement of historic rights.

We do not say that either plaintiff here is in actuality a Jones Act or Sieracki seaman. We only say he should be heard to prove his real character.

If the plaintiff succeeds in this effort and ultimately in his suit, the employer may recoup the amounts already paid by deducting them when satisfying the judgment. In the event the compensation was paid by one insurer and the judgment becomes payable by another, the employer as the legal debtor in both instances may retain from the settlement of the judgment the sums necessary to reimburse the compensation carrier. The two remedies—compensation and suit—are thus made complementary. An important purpose of the compensation statutes, to provide immediate relief to an injured employee, is achieved, and the injured party's opportunity to press further remedies remains unabridged.

This, admittedly, is the situation when the employee's suit precedes his compensation claim. If the suit fails for the plaintiff's inability to prove himself a seaman, under the statutes he may still seek compensation. The order of asking for relief should not be decisive. Rules of civil pleading allow alternative claims by the use of distinct and alternate counts, n'importe their inconsistency. F.R.Civ.P. 8(a). If the statutory compensation and maritime claims could both be the subject of one suit, the same joinder would be permitted. A subsequent

claim should not be illegitimated because it cannot proceed in the same forum as the first. These conclusions incarnate the spirit of *Yaka*. The Court insisted that the employee be assured of those privileges he would have enjoyed had his employer not been the owner of the ship. In the latter circumstances he may demand compensation from his employer and still sue the ship and her owner. The Court felt that the mere oneness of employer and shipowner, as here, should not prejudice the employee.

▮ We need not consider the assertion whether the award of compensation by the administrative compensation agencies is a finding that the men were not seamen and are therefore precluded through estoppel by judgment to assert the contrary in a subsequent suit. Admittedly, the action of the agency is sometimes made conclusive, frequently depending on whether the particular issue—such, as here, the status of the claimant—was litigated.[6] Similarly we do not discuss whether the payment and acceptance of compensation amount per se to an accord and satisfaction, a waiver or other release of the suit-claim.[7] The reason in both instances is that *Yaka* peremptorily dictates, to repeat, that a seaman-employee, actual or *Sieracki*, injured aboard his employer's vessel is to be put in the same position as one injured aboard a ship owned by a third party, and in the latter situation, the employee could recover compensation from his employer and still sue the third party for negligence or unseaworthiness. The *Yaka* employee cannot, therefore, be barred ipso facto by any administrative finding or award. Of course, he may settle and relinquish his claim by a release surviving the exacting scrutiny of admiralty. Cf. Garrett v. Moore-McCormack Co., 317

U.S. 239, 247–248, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

To say, however, that *Yaka* emasculates the exclusivity-of-remedy provisions under the compensation statutes is not correct. Those stipulations are rendered inapposite only when the employer is the shipowner and the employee is a seaman or executing his duties.

In sum, to prevail in his action here, each employee-plaintiff must bring himself within the ambit of general maritime or Jones Act remedies—otherwise his only claim is for compensation. If the plaintiffs here cannot prove they are seamen or performing the traditional duties of seamen, then their actions must fail.

▮ If at the time of his application for compensation the employee has in mind a further claim by way of suit, or is uncertain of his standing to pursue such an action, against the ship or shipowner, he should so advise the compensation agency when making his claim, as was done by the plaintiff Clowers here. In this the applicant or his counsel would vouch assurance of a return of the money in the event of recovery in the suit. This suggestion would in no wise encourage delay by the employer in the payment of compensation to the injured employee, if the agency found that he qualified for it, since the time and amount of the payment is a decision entrusted to the administrative agency, not to the employer. Immediate payment—a chief aim of the compensation statutes—would be achieved in the same degree as it would without the notification. At the same time, applicant and counsel would have been altogether candid with the agency, and the employer would be protected from duplication of payment by being advised

6. See, e.g., Hoffman v. New York, N.H. & H.R.R., 74 F.2d 227 (2 Cir. 1934), cert. den., 294 U.S. 715, 55 S.Ct. 513, 79 L.Ed. 1248; Smith v. Service Contracting, Inc., 236 F.Supp. 492, 495 (E.D.La.1964); Pritt v. West Virginia N.R.R., 132 W.Va. 184, 51 S.E.2d 105, 6 A.L.R.2d 562 (1948), cert. den., 336 U.S. 961, 69 S.Ct. 891, 93 L.Ed. 1113. But cf. Hagens v.

United Fruit Co., 135 F.2d 842 (2 Cir. 1943). See also 2 Davis, Administrative Law Treatise § 18.07, at 596–597.

7. See Mike Hooks, Inc. v. Pena, 313 F.2d 696 (5 Cir. 1963); Heagney v. Brooklyn Eastern Dist. Terminal, 190 F.2d 976 (2 Cir. 1951); Aycock v. Lykes Bros. Steamship Co., 236 F.Supp. 360 (S.D.Tex. 1964).

through the notice to withhold the sums paid from any judgment.

The judgments of dismissal will be vacated and the actions remanded for plenary hearing or trials. In the discretion of the District Judge, the status of each plaintiff may be resolved either as a special issue in a separate hearing or in the trial of the entire case, mindful that it can become a question of law. Lawrence v. Norfolk Dredging Co., 319 F.2d 805, 807 (4 Cir. 1963). To repeat, however, in the circumstances we do not think it appropriate for determination on a motion for summary judgment.

Reversed and remanded.