**Ivian M. FREEMAN, Appellee,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, Appellant.**

**No. 78–1376.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1979.

Decided May 3, 1979.

William T. Prince, Norfolk, Va. (Williams, Worrell, Kelly & Greer, Norfolk, Va., on brief), for appellant.

Raymond H. Strople, Portsmouth, Va. (Bernard Miller, Moody, McMurran & Mil-

ler, Ltd., Portsmouth, Va., on brief), for appellee.

Before HALL and PHILLIPS, Circuit Judges, and THOMSEN,* Senior District Judge.

K. K. HALL, Circuit Judge:

Norfolk & Western Railway Company [the Employer] appeals after unsuccessfully defending an action brought in district court by Ivian M. Freeman under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* [FELA]. The Employer does not appeal the sufficiency of the evidence upon which the jury found liability and awarded $26,190.80 in damages; rather, it appeals the district court's refusal to direct a verdict or grant judgment n. o. v. on the ground that Freeman, by his previous acceptance of benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* [LHWCA], had made a binding election of remedies and/or was estopped from asserting rights under FELA. The district court held that this argument was conclusively laid to rest by our decision in *Biggs v. Norfolk Dredging Co.,* 360 F.2d 360 (4th Cir. 1966). Although this troublesome issue is not so easily resolved, we affirm.

In November 1974 Freeman notified the Employer that he had sustained an injury to his left knee several months earlier and did not know whether that injury had occurred on the job. One year later Freeman filed a claim for benefits under LHWCA. The Employer promptly filed an answer admitting coverage, notwithstanding the fact that it was then involved in litigation to resolve whether its "Barney Yard workers" (Freeman's classification) were properly covered under LHWCA or FELA.[1]

Some months later the Employer wrote to Freeman's attorney to inquire whether Freeman would accept the uncontested ben-

---

* ROSZEL C. THOMSEN, Senior United States District Judge, United States District Court for the District of Maryland, sitting by designation.

1. *Conti v. Norfolk & Western Railway Co.,* 566 F.2d 890 (4th Cir. 1977). Judge Field, writing for a unanimous panel of the court, held that the Barney Yard workers, who unload coal from railroad hopper cars, are not "maritime" employees. Thus they are without the ambit of LHWCA and their exclusive remedy lies under FELA.

efits. Counsel, who was also representing the Barney Yard workers in the *Conti* litigation, responded on October 14, 1976 that "[u]nder no circumstances do we authorize payment to Mr. Freeman" under LHWCA, and if the Employer were unwilling to settle the claim under FELA, a lawsuit would be filed.

On November 23, 1976 counsel again wrote to the Employer and reversed his earlier position. "I have discussed this very thoroughly with Mr. Freeman and he is willing to make a claim [under LHWCA] . . . [i]n view of that fact, we disclaim any lien on this file and we will no longer be representing Mr. Freeman for any potential claim under FELA on account of this incident. . . ." The Employer began making payments and through June 5, 1977 had paid Freeman $6,190.80 in benefits. Freeman returned to work on June 6, 1977. On May 11, 1977 he filed suit under FELA, asserting in his complaint that all benefits paid under LHWCA would be properly offset against any judgment obtained in the suit.[2]

At trial and on appeal, the Employer contends that Freeman made a binding election of remedies as a matter of law when he accepted benefits under LHWCA—an argument the district court held to be foreclosed by *Biggs v. Norfolk Dredging Co., supra.* Alternatively, the Employer argues that Freeman made an election in fact or is estopped from pursuing a FELA claim by virtue of the November 23 letter, which stated that "[counsel] will no longer be representing Mr. Freeman for any potential claim under FELA."

Initially, we note that "in the absence of express legislative declaration to the contrary, the courts have been reluctant to extend [the] relatively harsh doctrine [of election of remedies.]" *Newport News Shipbuilding and Dry Dock Co. v. Director,* 583 F.2d 1273 at 1277 (4th Cir., 1978). However, we disagree with the district court's conclusion that *Biggs* is completely dispositive of the election issue. There an employee had filed for and received benefits under LHWCA on an allegation that he was not a seaman, and thereafter filed suit under the Jones Act, 46 U.S.C. § 688, on an allegation that he *was* a seaman. We held that the claimant was not precluded under an election theory from taking such an inconsistent position because (1) the LHWCA was not intended to foreclose traditional "remedies of the sea," specifically suit on an allegation of unseaworthiness,[3] and (2) there was no harm to the employer, since benefits obtained under LHWCA would be properly offset against any Jones Act recovery.[4]

The express rationale of *Biggs*—that under authority of *Yaka* a seaman may not be precluded from traditional remedies of the sea by his election of immediate benefits under compensation statutes—is simply inapposite here. But the underlying rationale of *Biggs* and the later election of remedies cases, *see* 2A Larson, Workmen's Compensation, ¶ 67.22 at 12–52 to 12–53, is the touchstone: statutory schemes for workmen's benefits are to be construed liberally, with doubts resolved in favor of coverage, and courts should not rush to apply the

---

**2.** The jury awarded Freeman $26,190.80 in the FELA suit, and the district court in fact offset the $6,190.80 previously awarded under LHWCA.

**3.** The court expressly relied on *Reed v. The S.S. Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), where it was held that any employee doing traditional seaman's work could sue on a warranty of seaworthiness, notwithstanding the availability of other compensation.

**4.** Significantly, in *Biggs* the claimant had notified the employer that he was reserving the right to take this inconsistent position, in order to obtain immediate benefits under LHWCA

and then a complete remedy under the Jones Act.

"If at the time of his application for compensation the employee has in mind a further claim by way of suit, or is uncertain of his standing to pursue such an action, against the ship or shipowner, he should so advise the compensation agency when making his claim, as was done by the plaintiff Clowers here." *Id.* at 365.

Here, although Freeman's counsel should have followed this laudable course, his failure to do so is not fatal on the facts of this case.

harsh doctrine of election. The purpose of compensation statutes is to provide *quick, certain* relief for work-related injuries. *Martin v. United States,* 566 F.2d 895 (4th Cir. 1977). Freeman's counsel has represented to this court that his client's acceptance of LHWCA benefits had its origin in necessity; Freeman simply could not afford to wait until his status was resolved in the *Conti* litigation. The Employer had taken the position in that litigation that his remedy lay under LHWCA. As it turned out, his proper remedy lay under FELA. Only after *Conti* had been decided, and after it had become apparent to Freeman that his injury was a permanent one, did he file suit under FELA. Since he offered to (and has) offset the prior LHWCA benefits against his FELA judgment, the Employer is not harmed, and "[a]n important purpose of the compensation statutes, to provide *immediate* relief to the injured employee, is achieved . . . ." *Biggs v. Norfolk Dredging Co.,* 360 F.2d at 364 (emphasis added). See also *Martin v. United States,* 566 F.2d at 899, where Judge Winter noted:

> "Any apparent inconsistency on the part of the plaintiff will work no prejudice to the defendant. As plaintiff concedes, fairness would require that any recovery by her in the tort case [under Federal Tort Claims Act] should be reduced by the amount of compensation that she has already received [under 5 U.S.C. § 8171.] This reduction would prevent any double recovery in this case. The elimination of the possibility of double recovery eliminates the justification for imposing an election."

Therefore, we hold that Freeman's acceptance of LHWCA benefits did not constitute, as a matter of law, a binding election of remedies which would bar a subsequent recovery under FELA.

■ Therefore, the final question for resolution is whether counsel's letter of November 23 is effective as a binding election in fact, or sets up an estoppel. We think not. "For the [letter] to be effective as an election of remedies it must be decisive and unequivocal." *Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 303 F.2d 527, 531 (10th Cir. 1962). See also *Hipp v. Kennesaw Life & Accident Ins. Co.,* 301 F.Supp. 92 (D.S.C. 1968) (Russell, J.), *aff'd,* 412 F.2d 1186 (4th Cir. 1969). Admittedly, the letter stated that no FELA claim would be pursued. But that statement cannot be deemed an "unequivocal" election either by its terms or under the circumstances: claimant Freeman was in need of immediate compensation, the Employer had taken the position in *Conti* that his exclusive remedy lay under LHWCA, and the Employer had offered the prospect of immediate relief without going through administrative proceedings. Freeman's decision to take immediate benefits was justified, and counsel's letter was not a release of his right to sue under FELA after he realized that his injury was permanent.

Finally, since the LHWCA benefits were offset against the FELA judgment, Freeman has not been enriched and the Employer has not been harmed.[5] Therefore, the doctrine of estoppel is inapplicable to this case. *Martin v. United States, supra.*

AFFIRMED.

---

5. The Employer's allegation of harm is purely speculative: *if* Freeman had asserted ineligibility under LHWCA (his ultimate position) and instead sued under FELA, and *if* he had lost the FELA suit, he would then be barred by the intervening *Conti* decision from pursuing benefits under LHWCA. Thus the Employer would have paid no compensation. But of course Freeman prevailed in the FELA suit, and we are unwilling to hold that he is estopped by what might have been. The Employer, which had a strong bargaining position at the time Freeman accepted statutory benefits, could have insisted upon a formal release to foreclose the possibility of a subsequent FELA suit.