**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ZEB ARTIS,
Petitioner,

v.

NORFOLK & WESTERN RAILWAY

No. 96-2677

COMPANY; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

NORFOLK & WESTERN RAILWAY
COMPANY,
Petitioner,

v.

No. 96-2678

ZEB ARTIS; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

On Petitions for Review of Orders
of the Benefits Review Board.
(94-3742)

Argued: October 1, 1997

Decided: February 22, 2000

Before WIDENER and MICHAEL, Circuit Judges, and
Lacy H. THORNBURG, United States District Judge for the
Western District of North Carolina, sitting by designation.

The petition of Artis is denied, the petition of Norfolk and Western Railway is granted, and the order of the Board is reversed and the case remanded by published opinion. Judge Widener wrote the majority opinion, in which Judge Thornburg joined. Judge Michael wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Robert Elliott Walsh, RUTTER & MONTAGNA, L.L.P., Norfolk, Virginia, for Petitioner. Joan F. Martin, WILLIAMS, KELLY & GREER, P.C., Norfolk, Virginia, for Respondents. **ON BRIEF:** Matthew H. Kraft, RUTTER & MONTAGNA, L.L.P., Norfolk, Virginia, for Petitioner.

_____

**OPINION**

WIDENER, Circuit Judge:

The claimant, Zeb Artis, Jr., worked as a brakeman at the Norfolk & Western Railway Company's Barney Yard at Lambert's Point terminal in Norfolk, Virginia. He assisted in moving loaded and empty railcars within the terminal in effectuating the transloading of coal from railcars to ocean-going vessels. The job required him to uncouple cars and to use a pinch bar to move the cars. On April 25, 1984, Artis injured his back while moving a railcar. Artis reinjured his back while throwing a rail switch on May 6, 1984 and has not returned to his previous work since that date.

Following his injuries, Artis filed an action in the Circuit Court of the City of Norfolk under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, against the railroad. The parties settled that claim for $150,000 in January 1985, and the state court entered an order that the case was "dismissed agreed" on February 5, 1985.**1**

_____

**1** Artis at that time executed a release releasing the N&W from "loss of any kind resulting or in any way arising from an accident(s) which

2

On April 23, 1991, Artis filed a claim for the same injuries under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-52 (1986). A formal hearing was held before an administrative law judge in October and November of 1993. The administrative law judge held that Artis was within the jurisdiction of LHWCA and implicitly found that the FELA settlement previously entered between the parties was not a jurisdictional bar. The judge also concluded that Artis was entitled to temporary total disability benefits from May 7, 1984 through December 27, 1984 and permanent partial disability benefits from December 28, 1984 and continuing. Finally, the ALJ granted the railroad a credit against the LHWCA benefits award for the $150,000 settlement pursuant to 33 U.S.C. § 903(e).

Artis filed a timely appeal with the Benefits Review Board on the finding of permanent partial disability and the grant of the credit. The railroad cross-appealed asserting that the LHWCA claim was barred by the prior settlement of the FELA claim. The Benefits Review Board did not render a formal decision. Rather, Public Law 104-134 affirmed the decision of the administrative law judge on September 12, 1996.**2**

Artis filed a petition for review on November 8, 1996 pursuant to 33 U.S.C. § 912(c), and N&W filed its cross-petition for review. On account of the doctrine of election of remedies, we reverse.

The doctrine of election of remedies "refers to situations where an individual pursues remedies that are legally or factually inconsistent." Dionne v. Mayor and City Council of Baltimore , 40 F.3d 677, 681 (4th Cir. 1994) (quoting Alexander v. Gardner-Denver Co., 415 U.S.

_____

occurred at or near Norfolk, Virginia on or about" the April and May 1984 dates involved here. The release provided that he was prevented "from making any further claims against [the railway] in connection with said accident(s)."

In Virginia "dismissed agreed" means that"the plaintiff forever loses his action." Hoover v. Mitchell, 25 Gratt. (66 Va.) 387, 391 (1874).
**2** Public Law 104-134 affirmed all appeals before the Benefits Review Board that were more than one year old

36, 49 (1974)). It has been considered in determining whether rights in one statute may be pursued cumulatively with those rights granted in another statute. See United States v. Brown , 348 U.S. 110 (1954); Feres v. United States, 340 U.S. 135 (1950) (discussing situations when claims under different federal statutes are exclusive or cumulative); 18 Wright & Miller, Federal Procedure & Practice § 4476 (1981). "The clearest remedial dimension of election doctrine is found in decisions that simply seek to prevent double recovery for a single injury." 18 Wright & Miller, Federal Practice & Procedure § 4476, at 775 (1981).

Under FELA, a worker must demonstrate that he is an employee of a common carrier by railroad to fall within the statute. 45 U.S.C. § 51. In contrast, a land-based worker to prove that he is within the statute, must be engaged in activity which is "integral or essential to the loading process" to recover under LHWCA. Etheridge v. Norfolk & Western Ry. Co., 9 F.3d 1087, 1090 (4th Cir. 1993).

The law is that if a claimant is a maritime worker, then his exclusive remedy is under LHWCA. Chesapeake & Ohio Ry. Co. v. Schwalb, 493 U.S. 40, 42 (1989); Caldwell v. Ogden Sea Transport Inc., 618 F.2d 1037, 1049 (4th Cir. 1980). Conversely, if a worker is not a maritime worker, then his remedy must be provided by another statute or the common law. Accordingly, at the time of filing a lawsuit, the claimant must decide whether he is a maritime worker and thus eligible for a remedy under LHWCA or whether he must find another cause of action. In the present case, Artis correctly determined that at the time of his FELA lawsuit he could not claim that he was a maritime worker. At the time Artis's FELA case was filed and disposed of in the Circuit Court in Norfolk, Conti v. Norfolk & Western Ry. Co., 566 F.2d 890 (4th Cir. 1977), held that brakemen at the Lambert's Point yard were not maritime workers and were not covered by LHWCA. Thus, Artis, being a brakeman at the Lambert's Point yard, filed suit under FELA and recovered a settlement of $150,000.

Subsequent to Artis's settlement of his FELA suit, the law of this circuit changed. We held in Etheridge v. Norfolk & Western Ry. Co., 9 F.3d 1087, 1090 (4th Cir. 1993), that the Supreme Court decision in Chesapeake & Ohio Ry. Co. v. Schwalb, 493 U.S. 40 (1989), had

4

changed the law set out in Conti; that brakemen at Lambert's Point yard were acting in a fashion that was integral or essential to the loading or unloading of a vessel; and thus were covered by LHWCA. Artis, in 1991,**3** had asserted his claim against the railroad under LHWCA. Because of his recovery under the FELA claim, the defense argued, Artis might not now advance an LHWCA claim. To permit an LHWCA claim subsequent to an FELA recovery, the argument went, would ignore the LHWCA provision providing that it is the exclusive remedy against employers for injuries suffered by maritime workers. 33 U.S.C. § 905(a) (1986); Schwalb, 493 U.S. at 42. The two claims were legally inconsistent, the defense concluded, because LHWCA is not a cumulative remedy.

This court has never held that a worker may pursue an LHWCA remedy after obtaining a remedy under FELA. It has approved an FELA remedy after a worker received LHWCA benefits for reasons that are distinguishable. In Freeman v. Norfolk & Western Ry. Co., 596 F.2d 1205 (4th Cir. 1979), we held in a case in which FELA provided a cause of action, that an employee could pursue an FELA claim notwithstanding previous receipt of LHWCA benefits. See also Caldwell, 618 F.2d 1037, 1048-50 (4th Cir. 1980) (following Freeman). The decision in Freeman was based on the rationale that workers' compensation statutes, including LHWCA, are designed to provide "quick certain relief for work related injuries." Freeman, 596 F.2d at 1208. (italics in original.) Thus, we considered that the LHWCA payments would be creditable against an FELA award and that receiving compensation under such a statute would not be a meaningful election of remedy. Freeman, 596 F.2d at 1208. This case presents a different situation because Artis's FELA action preceded his action under the LHWCA. We do not view Artis's LHWCA claim as receipt of quick, certain relief for work related injuries when he has previously recovered, some five or six years previously, under FELA, for the same injury. Because Artis has fully recovered damages for his injury under FELA, the compensatory purpose of LHWCA is not harmed by denying Artis's LHWCA suit.**4**

_____

**3** The claim is also referred to as a 1992 case, the difference in dates being inconsequential.

**4** **Freeman** has not been followed in this circuit since Schwalb. Whether it remains fully authoritative, however, is a question not before us and upon which we express no opinion.

5

The next point we consider is whether or not N&W would be entitled to a credit for the FELA settlement under 33 U.S.C. § 914(j). That section provides that:

> If an employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due.

The argument is that the FELA settlement and judgment was an advance payment of compensation and that since the railroad would be entitled to be reimbursed out of any unpaid installment of compensation under the LHWCA, the suit under the LHWCA should be allowed to proceed. A principal difficulty with the argument is that the payment of $150,000 to Artis under the FELA was not an advance payment of compensation.[5] It was complete satisfaction for an injury, paid following litigation, and should not be equated with the advance payments an employer would make to his employee as "quick, certain relief for work related injuries." Freeman , 596 F.2d 1208. As previously noted, note 1, supra, Artis signed a complete release of all claims at issue here.[6] Not only that, at the time Artis pursued his FELA remedy against the railroad, that was entirely in accord with precedent in this circuit. Conti v. Norfolk & Western Ry., 566 F.2d 890 (4th Cir. 1977). Indeed, under Conti, Artis had no cause of action under the LHWCA. The final order in Artis's FELA case against Norfolk & Western was entered February 5, 1985, and the liability of the railway was fixed by court order at that time. Later, on November 28, 1989, the Supreme Court decided Chesapeake & Ohio Ry. Co. v. Schwalb, 493 U.S. 40 (1989), in which the Court decided that an employee in Artis's shoes at the Norfolk & Western installation in Norfolk was subject to the LHWCA rather than the FELA and that "resort may not be had to the Federal Employer's Liability Act."

_____

[5] We agree with Shell Offshore Inc. v. Director, Office of Worker's Comp. Programs, 122 F.3d 312, 317-318 (5th Cir. 1997), cert. den'd, 66 U.S.L.W. 3604 (1998), that payments under § 914(j) are not available to be credited to the employer unless they are "intended to be advance payments of compensation" which the FELA payment in this case patently was not.

[6] While the railroad does not claim the release is a bar to the LHWCA action, it nevertheless is worthy of mention.

6

Schwalb, 493 U.S. at 42. On that account only was Artis able to prosecute his present claim under the LHWCA. In these circumstances, we are of opinion that the payments made to Artis in his FELA case were not intended to be and in fact were not advance payments of compensation and that, therefore, the railroad would not be entitled to be reimbursed for those payments under the LHWCA, 33 U.S.C. § 914(j).

We also note that no credit is allowable to the railroad for the FELA settlement under the provisions of 33 U.S.C.§ 903(e) of the LHWCA. That section provides in pertinent part that"any amounts paid to an employee for the same injury . . . for which benefits are claimed under this chapter pursuant to any other workers' compensation law . . . shall be credited against any liability imposed by" the LHWCA. In Consolidated Rail Corp. v. Gottshall , 512 U.S. 532, 543 (1994), the Court held that FELA is not a workers' compensation statute. It stated:

> That FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute. We have insisted that FELA does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. (internal quotations omitted).

The FELA settlement not being paid under a workers' compensation law, that payment should not be credited under§ 903(e).

While the cases and the text cited state that the doctrine of election of remedies is not favored, in this case we are of opinion to apply it. Because the injury in question is the same and the claims arise from the same facts; because recovery under the FELA and LHWCA rest on different substantive theories, the first on negligence, the second on a workers' compensation statute based on liability without fault; because Artis proceeded entirely consistent with circuit precedent under the FELA to sue the railway and collected $150,000 in the settlement; because the later Schwalb decision was entirely fortuitous; and because, in this case, permitting first, a suit for complete recovery under the FELA, and second, a claim under the LHWCA, would permit a double recovery for the same injuries; we are of opinion that

7

Artis elected his remedy when he prosecuted his FELA suit to judgment and that the doctrine of election of remedies would bar his LHWCA claim.

The petition for review of Artis is denied; the cross-petition of the railway is granted; the order of the Benefits Review Board from which review is sought is reversed; and the case is remanded to that Board for entry of an order consistent with this opinion.

REVERSED AND REMANDED

MICHAEL, Circuit Judge, dissenting:

As the majority recognizes, "the doctrine of election of remedies is not favored." Ante at 7. Moreover, if a final judgment has been entered in the prior case, the doctrine is of little use because claim preclusion principles work better in determining whether a new claim is barred. I would therefore apply res judicata principles to decide whether Artis's subsequent longshoremen's claim is precluded. Because the later claim is not barred by res judicata, I must respectfully dissent.

I.

Federal courts from way back have taken a dim view of the election of remedies doctrine. See Friederichsen v. Renard, 247 U.S. 207, 213 (1918) ("At best this doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended . . . ."). Our own court has refused to apply the doctrine in cases involving claims under the very statute before us today, the Longshore and Harbor Workers' Compensation Act (LHWCA). In Newport News Shipbuilding and Dry Dock Company v. Director, OWCP, 583 F.2d 1273, 1277 (4th Cir. 1978), we noted that "courts have been reluctant to extend this relatively harsh doctrine." We went on to hold that an election of remedies defense would not bar a LHWCA claim brought by a welder who had earlier sought (and been denied) relief under a state workers' compensation statute. Id. at 1277. We have also declined to use the doctrine to bar a FELA claim brought by a worker who had already been awarded LHWCA bene-

8

fits. See Freeman v. Norfolk and Western Ry. Co. , 596 F.2d 1205, 1208 (4th Cir. 1979) (holding that plaintiff's "acceptance of LHWCA benefits did not constitute, as a matter of law, a binding election of remedies which would bar a subsequent recovery under FELA").

The election of remedies doctrine is especially unsuitable when a second claim can be analyzed under claim preclusion principles. Once a final judgment is entered, the doctrine is "usually superfluous . . . because the doctrines of claim preclusion and issue preclusion can and should determine the viability of any claims seeking additional remedies." 18 James Wm. Moore et al., Moore's Federal Practice § 131.13[5][c] (3d ed. 1999). See also 18 Charles Alan Wright et al., Federal Practice & Procedure § 4476, at 773 (1981) ("Whatever utility it may retain in other areas, election of remedies reasoning has become useless and potentially dangerous in dealing with preclusion by judgment."). Accordingly, we have refused to apply the election of remedies doctrine in a Title VII case where the plaintiff had previously obtained a favorable state administrative decision that was not appealed. We applied res judicata principles instead. See Dionne v. Mayor and City Council, 40 F.3d 677, 681 (4th Cir. 1994) (citing with approval 18 Wright et al., supra, § 4476, at 773 ("[T]he election label has traditionally been used to explain decisions that today seem better explained in terms of claim preclusion.")); see also Haphey v. Linn County, 953 F.2d 549, 552 (9th Cir. 1992) (en banc).

Here, after Artis hurt his back at work, he brought a FELA claim against his employer (the railroad) in state court, settled the case, and consented to the entry of a dismissal order, which amounted to a final judgment. Later, after the law changed, Artis filed a LHWCA claim against the railroad based on the same injury. In these circumstances, res judicata principles, not the election of remedies doctrine, should determine whether the second claim is barred.**1** I now turn to the res judicata analysis.

_____

**1** The election of remedies doctrine does not in any event bar Artis's LHWCA claim. The doctrine "refers to situations where an individual pursues remedies that are legally or factually inconsistent." Alexander v. Gardner-Denver Co., 415 U.S. 36, 49 (1974). The proof and theories are not identical in FELA and LHWCA claims, and when Artis established his LHWCA claim, he did not offer facts or arguments that were inconsistent with positions he took in his earlier FELA suit.

9

II.

The Full Faith and Credit Statute, 28 U.S.C. § 1738, directs a federal court to follow state preclusion law to determine the res judicata effect of a state court judgment even when the federal court has exclusive jurisdiction over the subsequent suit. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380-82 (1985). Because Artis's FELA claim was brought and disposed of in Virginia state court, we look to Virginia's res judicata doctrine. Under Virginia law res judicata bars a claim if all of four elements are present: "`(1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made.'" Smith v. Ware, 421 S.E.2d 444, 445 (Va. 1992) (quoting Wright v. Castles , 349 S.E.2d 125, 128 (Va. 1986)).

Because the causes of action under FELA and the LHWCA are not identical, res judicata does not bar Artis's second (LHWCA) claim. In Virginia "[t]he principle test to determine whether claims are part of the same cause of action is whether the same evidence will support both claims." Flora, Flora & Montague, Inc. v. Saunders, 367 S.E.2d 493, 495 (Va. 1988). Unless "the same evidence is necessary to prove each claim," the causes of action are distinct. Brown v. Haley, 355 S.E.2d 563, 567 (Va. 1987). While a worker must prove employer negligence under FELA, no such proof is required for a claim under the LHWCA, which is a no-fault workers' compensation system. See 45 U.S.C. § 51; 33 U.S.C. § 903. Because there are some fundamental differences in the evidence required to prove these two claims, the prior judgment on Artis's FELA claim is not res judicata as to his LHWCA claim.

Nor does the doctrine of judicial estoppel bar Artis's second claim. "The `determinative factor' in the application of judicial estoppel is whether the party who is alleged to be estopped`intentionally misled the court to gain unfair advantage.'" John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 29 (4th Cir. 1995) (quoting Tenneco Chemicals, Inc. v. William T. Burnett & Co., 691 F.2d 658, 665 (4th Cir. 1982)). When Artis brought his FELA suit in Virginia state court, the case law established that he was not entitled to assert a claim under

10

the LHWCA. As a result, he could not have intended to mislead the Virginia court in any way.

Furthermore, section 5 of the LHWCA does not affect my conclusion that Artis's LHWCA claim is viable. That section provides that the LHWCA is meant to be a worker's exclusive remedy. See 33 U.S.C. § 905(a); Chesapeake & Ohio Ry. Co. v. Schwalb, 493 U.S. 40, 42 (1989). As the Supreme Court has recognized, however, the purpose of this section is to circumscribe an employer's liability. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 129 (1956) ("The obvious purpose of this provision is to make the statutory liability of an employer to contribute to its employee's compensation the exclusive liability of such employer to its employee . . . .") (emphasis omitted). The ALJ was faithful to this purpose by granting the railroad a credit for benefits paid to Artis in the FELA settlement, and I would do the same.

I would authorize a credit to the railroad based on the following reasoning of the Benefits Review Board in Jenkins v. Norfolk & Western Railway Company, 1996 WL 582388 (DOL Ben. Rev. Bd. 1996), a case in which an employee's FELA settlement was subtracted from his LHWCA award:

> The Longshore Act contains various offset or credit provisions which prevent employees from receiving a double recovery for the same injury, disability or death. See 33 U.S.C. §§ 903(e), 914(j), 933(f); see also Lawson v. Standard Dredging Co., 134 F.2d 771 (5th Cir. 1943). Although the settlement recovery under the FELA in this case does not fall within the explicit terms of any of these sections, they nonetheless provide guidance in this case. Section 3(e) provides [an] employer with a credit for payments under other workers' compensation laws or the Jones Act, and Section 33(f) provides an offset for recovery from a third party who is liable in damages for an employment-related disability or death. Section 14(j) covers the advance payment of benefits pursuant to the Longshore Act. See, [e.g.], Mason v. Baltimore Stevedoring Co., 22 BRBS 413 (1989). In addition, an independent credit doctrine exists in case law that provides [an] employer with a credit for prior disability

11

payments under certain circumstances to avoid a double recovery of compensation for the same disability. <u>See</u> <u>Strachan Shipping Co. v. Nash</u>, 782 F.2d 513, 18 BRBS 45 (CRT) (5th Cir. 1986) (en banc); <u>Adams v. Parr Richmond Terminal Co.</u>, 2 BRBS 303 (1975).

<u>Jenkins</u>, 1996 WL 582388, at *2. Here, with a credit, the railroad is no worse off than it would have been if Artis had been able to bring his claim under the LHWCA in the first place.[2]

III.

I would affirm the ALJ's award of permanent partial disability benefits to Artis. However, I would remand for the ALJ to recalculate the railroad's credit for the FELA settlement by excluding the amount that went for attorney's fees.

_____

[2] In calculating the amount of the credit, I would (unlike the ALJ) deduct attorney's fees from the gross amount of Artis's FELA settlement. This should be done because attorney's fees are not considered "compensation" for workplace injury under the usual workers' compensation scheme. <u>See Jenkins</u>, 1996 WL 582388, at *3; <u>Bundens v. J.E. Brenneman Co.</u>, 46 F.3d 292, 304 n.24 (3d Cir. 1995).

12