UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

NORFOLK SOUTHERN RAILWAY
COMPANY,

*Petitioner,*

v.

MAURICE E. WILSON, SR.; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

*Respondents.*

No. 98-1929

On Petition for Review of an Order
of the Benefits Review Board.
(97-1102)

Argued: December 7, 2000

Decided: February 7, 2001

Before NIEMEYER, LUTTIG, and WILLIAMS, Circuit Judges.

---

Reversed by unpublished opinion. Judge Luttig wrote the opinion, in
which Judge Niemeyer and Judge Williams joined.

---

## COUNSEL

**ARGUED:** James Long Chapman, IV, CRENSHAW, WARE &
MARTIN, P.L.C., Norfolk, Virginia, for Petitioner. Gregory Edward
Camden, MONTAGNA, KLEIN & CAMDEN, L.L.P., Norfolk, Vir-
ginia, for Respondents. **ON BRIEF:** Martha M. Poindexter, Sheryl-

Lynn C. Makela, CRENSHAW, WARE & MARTIN, P.L.C., Nor-folk, Virginia, for Petitioner.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

LUTTIG, Circuit Judge:

Petitioner Norfolk Southern Railway Company appeals the Bene-fits Review Board's order affirming the ALJ's grant of benefits to respondent Maurice Wilson under the Longshore and Harbor Work-ers' Compensation Act (LHWCA). Because Wilson previously col-lected a settlement from Norfolk Southern under the Federal Employers' Liability Act (FELA) for the same injury, the doctrine of election of remedies bars his present action for benefits under the LHWCA. Accordingly, we reverse the Board's order affirming the award of LHWCA benefits.

I.

Respondent Maurice Wilson is a former employee at the Lambert's Point Yard operated by petitioner Norfolk Southern Railway Company.[1] The Lambert's Point Yard receives, processes, and stores railroad cars filled with coal that is then loaded onto ships. Wilson's job as a brake-man entailed operating the brake on a railroad car to enable it to travel down the track to the dock for loading. J.A. 24-26.

Wilson injured his back on the job in November 1985. He then faced a decision whether to file for benefits under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, or under the

---

[1]Norfolk & Western Railway Company merged into its parent com-pany during the pendency of this appeal and is now known as Norfolk Southern Railway Company.

Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-50. The LHWCA provides the exclusive remedy for maritime workers, whereas FELA provides the exclusive remedy for railroad workers assisting in interstate commerce. *See Chesapeake and Ohio Ry. Co.* v. *Schwalb*, 493 U.S. 40, 42 (1989) (where an employee is covered by the LHWCA, "the remedy provided by that Act is exclusive and resort may not be had to the Federal Employers' Liability Act (FELA)"); *Wabash R.R. Co.* v. *Hayes*, 234 U.S. 86, 89 (1914) (FELA is "exclusive in its operation, not merely cumulative"). Thus, before filing for benefits, Wilson had to decide whether, as a brakeman at a yard where coal is unloaded from railroad cars onto ships, he was a maritime worker exclusively eligible for benefits under the LHWCA or a railroad worker exclusively covered by FELA. In December 1986, Wilson elected to file an action against Norfolk Southern in Virginia state court under FELA. His decision was in accord with this court's precedent at the time, which held that brakemen at the Lambert's Point Yard were not maritime workers and were therefore not covered by the LHWCA. *See Conti* v. *Norfolk & Western Ry. Co.*, 566 F.2d 890, 895 (4th Cir. 1977).

Wilson subsequently settled his FELA suit against Norfolk Southern for $150,000. Pursuant to the settlement, he released Norfolk Southern from "all claims . . . in any way arising from" the accident leading to his 1985 back injury, and he acknowledged that the settlement "prevent[ed] [him] from making any further claims against [Norfolk Southern] in connection with said accident . . . ." J.A. 317.

Several years later, we held, in light of an intervening Supreme Court case, that brakemen at Lambert's Point are, in fact, maritime workers whose exclusive remedy is provided by the LHWCA. *See Etheridge* v. *Norfolk & Western Ry. Co.*, 9 F.3d 1087, 1090 (4th Cir. 1993) (interpreting *Chesapeake & Ohio Ry. Co.* v. *Schwalb*, 493 U.S. 40 (1989)).[2] Thus, in August 1995 — almost nine years after Wilson

---

[2]We explained in *Conti* that brakemen are not covered by the LHWCA because the tasks and functions they perform are typically associated with railroading and are not of a traditionally maritime nature. *See Conti*, 566 F.3d at 895. In *Etheridge*, we noted that the Supreme Court in *Schwalb* specifically rejected the reasoning on which *Conti* was based, and we held that brakemen are covered by the LHWCA because their work is "integral or essential to the loading process," the standard set forth in *Schwalb*. *See Etheridge*, 9 F.3d at 1090.

first filed his FELA action, and despite the settlement agreement bar-
ring future claims arising from his 1985 back injury — he filed the
present case under the LHWCA, seeking permanent partial disability
benefits from Norfolk Southern for the same back injury. The ALJ
awarded benefits to Wilson, the Benefits Review Board affirmed, and
this appeal followed.

## II.

We placed this case in abeyance for *Artis* v. *Norfolk & Western
Railway Co.*, 204 F.3d 141 (4th Cir. 2000), which presented substan-
tially the same facts and issues as the present case. Norfolk Southern
argues, and the United States Department of Labor concedes, that
*Artis* controls this case. We agree. We held in *Artis* that the doctrine
of election of remedies bars a claimant from collecting LHWCA ben-
efits for the same injury that was the basis for a prior FELA settle-
ment with the same employer. *Id.* at 146. Here, too —
notwithstanding Wilson's attempts to distinguish the present case
from *Artis* — we hold that the election doctrine bars Wilson from
recovering LHWCA benefits after collecting a FELA settlement for
the same injury.

## A.

The present case is nearly identical to *Artis*. In *Artis*, as here, the
claimant suffered a back injury in the mid-1980s while working as a
brakeman for Norfolk Southern at its Lambert's Point Yard. In *Artis*,
as in this case, the claimant filed an action against Norfolk Southern
under FELA in state court and ultimately settled for $150,000. Like
Wilson, the claimant in *Artis*, subsequent to our decision in *Etheridge*,
filed a claim under the LHWCA for benefits arising out of the same
injury that was the basis for his FELA settlement. And in *Artis*, as
here, the Board affirmed the ALJ's award of LHWCA benefits to the
claimant, less a credit to Norfolk Southern against the LHWCA bene-
fits for the amount of the FELA settlement. *Artis*, 204 F.3d at 142-43.

We held in *Artis* that the claimant "elected his remedy when he
prosecuted his FELA suit to judgment and that the doctrine of elec-
tion of remedies would bar his LHWCA claim." *Id.* at 146. We
explained that the election doctrine "refers to situations where an indi-

vidual pursues remedies that are legally or factually inconsistent." *Id.* at 143. This case, like *Artis*, presents such a circumstance.

In 1986, Wilson claimed he was a railroad worker assisting in interstate commerce, and that he was therefore entitled to FELA benefits. Now, having already received FELA benefits in the form of a settlement, Wilson asserts the contrary position — that he is actually a maritime worker whose remedy lies under the LHWCA. Yet FELA and the LHWCA are mutually exclusive remedies, and Wilson's earlier claim to status as a railroad worker is inconsistent with his current claim of maritime employment. Therefore, we conclude — as we did in *Artis* — that Wilson is asserting factually and legally inconsistent remedies. His LHWCA claim is thus barred under the election doctrine set forth in *Artis*.

### B.

Wilson's attempts to distinguish *Artis* are unavailing. First, Wilson argues that this case differs from *Artis* because he and Norfolk Southern stipulated before the ALJ in Wilson's FELA action that he was entitled to temporary total disability benefits for the five months immediately following the accident; in *Artis*, by contrast, the claimant's entitlement to benefits for the period immediately following his accident was disputed. Respondent's Br. at 14; J.A. 310. Wilson argues that this stipulation demonstrates that Norfolk Southern has acknowledged his entitlement to LHWCA benefits for a period after the accident, and that Norfolk Southern is estopped from now arguing that he is not eligible for LHWCA benefits. The stipulation cited by Wilson, however, does not support his entitlement to benefits under the LHWCA. In fact, the stipulation states that "there still is a dispute between the parties as to whether the claimant met the status requirements under the Longshore and Harbor Workers' Compensation Act." J.A. 311. Further, even if the parties had stipulated to Wilson's entitlement to LHWCA benefits, such stipulation would only illustrate that at the time Wilson elected his exclusive remedy under FELA, he also believed he had the alternative of filing for LHWCA benefits. Having consciously elected one of two mutually exclusive remedies, he is now barred from pursuing the other.

Second, Wilson argues that *Artis* is inapplicable because, unlike the claimant in *Artis*, he concedes that Norfolk Southern is entitled to

reduce its obligations under the LHWCA by the amount of the FELA settlement. Respondent's Br. at 20 (stating that Norfolk and Western would be entitled to a credit under 33 U.S.C. § 914(j) or under principles of unjust enrichment). Thus, Wilson argues that affirming the award of LHWCA benefits would not afford him a windfall and that the election doctrine is wholly inapplicable absent a risk of double recovery.

However, even if Wilson voluntarily provided a credit to which Norfolk Southern would not otherwise be entitled,[3] *Artis* would still control the outcome of this case. For, while we stated in *Artis* that "the clearest remedial dimension of election doctrine is found in decisions that simply seek to prevent double recovery for a single injury," that decision did not hinge solely on the risk of double recovery, and we did not limit application of the election doctrine to cases where double recovery is threatened.[4] *Artis*, 204 F.3d at 143 (stating that the

---

[3]We held in *Artis* that the railroad would not be entitled to a credit toward LHWCA benefits for the amount of an earlier FELA settlement arising out of the same accident. *Artis*, 204 F.3d at 145-46.

[4]Our cases on election of remedies decided prior to *Artis* do not compel a different result. In *Freeman* v. *Norfolk and Western Railway Co.*, 596 F.2d 1205 (4th Cir. 1979), and *Martin* v. *United States*, 566 F.2d 895 (4th Cir. 1977), we declined to apply the election doctrine, in part because there was no risk of double recovery. However, we emphasized in both cases that there was *also* no "evidence of conscious intent to elect [one remedy over another] and to waive . . . other rights." *Martin*, 566 F.2d at 895 (claimant's acceptance of LHWCA compensation benefits that were unilaterally and voluntarily offered by employer was not an unequivocal election of remedies that barred subsequent recovery in tort); *Freeman*, 596 F.2d at 1208 (claimant's actions could not "be deemed an 'unequivocal' election" and hence did not constitute "a release of his right to sue" in a subsequent action). Here, in contrast, it is clear that Wilson elected his remedy when he filed his FELA suit and pursued it until he reached a settlement. *See Artis*, 204 F.3d at 141 (claimant "elected his remedy when he prosecuted his FELA suit to judgment."). Nor is there doubt that by settling his FELA action, Wilson was on notice that he waived other rights and released his right to sue in a subsequent action arising from the same injury. J.A. 317 (settlement agreement in which Wilson released Norfolk Southern from "all claims . . . in any way arising from" the accident leading to his 1985 back injury, and acknowledged that the settlement "prevents [him] from making any further claims against [Norfolk Southern] in connection with said accident . . . .").

doctrine applies where an individual pursues factually or legally inconsistent remedies). Indeed, the prevention of double recovery is but one purpose of the election doctrine. *Cf. Dionne* v. *Mayor and City Council of Baltimore*, 40 F.3d 677, 681, 687 n.1 (4th Cir. 1994) (discussing multiple purposes of the election doctrine, including but not limited to the prevention of double recovery).

Accordingly, we conclude that, under *Artis*, the election doctrine prevents Wilson from recovering LHWCA benefits for the same injury that was the basis of his FELA settlement with Norfolk Southern. We therefore reverse the order of the Benefits Review Board affirming the ALJ's grant of LHWCA benefits.

## *CONCLUSION*

For the foregoing reasons, the order of the Benefits Review Board is reversed.

*REVERSED*