**[J-68-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| ROBERT ARLET, | : | No. 12 WAP 2021 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered July |
| | : | 29, 2020 at No. 1722 CD 2018, |
| v. | : | affirming the Order of the Workers' |
| | : | Compensation Appeal Board |
| | : | entered December 4, 2018 at No. |
| WORKERS' COMPENSATION APPEAL | : | A17-0526. |
| BOARD (COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPARTMENT OF | : | ARGUED:  October 26, 2021 |
| LABOR AND INDUSTRY, BUREAU OF | : | |
| WORKERS' COMPENSATION), | : | |
| | : | |
| Appellees | : | |

## OPINION

**JUSTICE MUNDY**                                      **DECIDED: FEBRUARY 23, 2022**

In this appeal by permission, we consider the right of an insurer to subrogation under the Workers' Compensation Act (WCA).[1]  More specifically, we consider, as a matter of first impression for this Court, the limitations of the general equitable prohibition of an insurer seeking subrogation from its insured.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 9, 2011, during the course and scope of his employment as a shipwright, Robert Arlet (Claimant) slipped and fell on an icy sidewalk on the premises of his

---

[1] Act of June 2, 1915, P.L. 736, No. 338, as amended, 77 P.S. § 1, *et seq.*

employer, Flagship Niagara League (Employer), sustaining injuries.[2]  Employer had obtained a Commercial Hull Policy from Acadia Insurance Company (Insurer).[3]  Through the policy, Insurer provided coverage for damages caused by the Brig Niagara and for Jones Act[4] protection and indemnity coverage for the "seventeen (17) crewmembers" of the Brig Niagara.  Cover Letter for Commercial Hull Policy: CHA028883411; Reproduced Record at 45a.[5]  Employer had also at some point obtained workers' compensation insurance from the State Workers' Insurance Fund (SWIF).[6]

---

[2] Employer is a non-profit associate organization of the Pennsylvania Historical and Museum Corporation.  It is responsible for maintaining and operating the U.S. Brig Niagara and its homeport, the Erie Maritime Museum.

[3] Claimant, as Appellant, acts on behalf of Insurer pursuant to a power of attorney and fee agreement of record, which granted "unto my said attorneys complete power and authority" over the conduct of his case.  Notes of Testimony, 11-16-2016, Claimant Exhibit C-03; *see Arlet v. Workers' Compensation Appeal Board*, 237 A.3d 615, 617 n.1 (Pa. Cmwlth. 2020).  Herein, we refer to Appellant's arguments as Insurer's and refer to Mr. Arlet as Claimant.

[4] The Jones Act refers to Section 33 of the Merchant Marine Act of 1920, 46 U.S.C.A. § 30104 (formerly cited as App. U.S.C.A. § 688), which provides enhanced protection to workers exposed to the perils of the sea.  *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995).  It provides a "seaman" the ability to sue his employer for negligence and to recover for injuries sustained in the course of his employment.  *Id.* at 355-56.  Once an individual is found to be covered by federal maritime law, the state workers' compensation law is preempted.  *Hill v. Workmen's Comp. Appeal Bd. (Spirit of Phila.)*, 703 A.2d 74, 78-80 (Pa. Cmwlth. 1997).

[5] The policy language refers to "members of the crew" and the parties use the terms "crewmember" and "members of the crew" synonymously.

[6] Certain funds paid by employers pursuant to the WCA, are directed to SWIF, which "provide[s] insurance coverage to subscribing employers as an alternative to contracts of insurance with private commercial carriers."  *Key Handling Sys., Inc. v. Workers' Comp. Appeal Bd. (Jenkins)*, 729 A.2d 109, 112-13 (Pa. Cmwlth. 1999); *see also* Section 1504 of the WCA, 77 P.S. § 2604.

Insurer paid benefits to Claimant under its Commercial Hull Policy's "maintenance and cure" provision, which "concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Maritime, Inc.*, 531 U.S. 438, 441 (2001). Specifically, Insurer paid Claimant maintenance of $50.00 per day for 92 days plus $42,133.36 in medical expenses. On February 8, 2013, Claimant filed a claim for workers' compensation benefits effective March 9, 2011. Employer filed an answer asserting Claimant's remedy was exclusively governed by the Jones Act, and furthermore that Claimant had fully recovered from his injury by May 12, 2011. Employer also filed to join SWIF as an additional insurer in the event the WCA was deemed to supply the applicable exclusive remedy, and Employer was found to be liable thereunder. SWIF filed an answer denying coverage, alleging Employer's policy was lapsed at the time of Claimant's injury. Thereafter, Claimant filed an Uninsured Employers Guaranty Fund (UEGF) claim petition, asserting the fund's liability in the event he prevailed, and Employer was deemed uncovered by SWIF and failed to pay.[7] UEGF filed an answer, denying the principal allegations in the petition.

The Workers' Compensation Judge (WCJ) bifurcated the proceedings to first address whether Claimant was a "seaman" for the purposes of the Jones Act. If so, recovery through the WCA would be pre-empted, but Claimant could, pursuant to the Jones Act, sue Employer for negligence, which recovery had already been effected

---

[7] The Legislature created the UEGF, via legislation amending the WCA, "for the exclusive purpose of paying to any claimant or his dependents workers' compensation benefits due and payable ... and any costs specifically associated therewith where the employer liable for the payments failed to insure or self-insure its workers' compensation liability ... at the time the injuries took place." 77 P.S. § 2702(c). The enactment, which created the fund, also provides that if an injured worker's claim "is not voluntarily accepted as compensable, the employee may file a claim petition naming both the employer and the fund as defendants." 77 P.S. § 2704.

through the above noted payments by insurer. Following testimony and argument, the WCJ ruled that Claimant was a "seaman" covered exclusively under the Jones Act and therefore ineligible for workers' compensation benefits. The WCJ reasoned that the term "member of the crew" as used in the Commercial Hull Policy, and the term "seaman" as used in the Jones Act, were synonymous. Claimant appealed, and the Workers' Compensation Appeals Board (WCAB) reversed that determination. It reasoned that, as a land-based employee, Claimant did not meet the definition of seaman under the Jones Act and was, therefore, entitled to pursue his workers' compensation claim.[8]

On remand, the WCJ awarded Claimant total disability benefits at a weekly rate of $411.75 from March 8, 2011 to August 19, 2011. The WCJ determined that, because Employer had not maintained a state workers' compensation insurance policy at the time of Claimant's injury, it would be responsible for payment of the amount of the award that exceeded the benefits paid under the Commercial Hull Policy, being net uncompensated wage loss of $5,046.71. Additionally, the WCJ held that Insurer was not entitled to subrogation because it had correctly paid Claimant under its Commercial Hull Policy, and that, if Employer failed to pay, UEGF must pay the benefits, with leave to pursue

---

[8] Somewhat prescient of the instant issue the WCAB noted the following respecting Insurer's payments under the Commercial Hull Policy:

> Rather, it is our understanding that when a party's entitlement to certain benefits is ultimately established by litigation, any benefits which were previously received by the party absent any litigation, the receipt of which is legally inconsistent with the ultimate award of benefits, are subject to being reimbursed to the original payor. *See, e.g, Lucev v. WCAB (VY-CAL Plastics)*, 732 A.2d 1201 (Pa. 1999) (holding that a person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty is entitled to restitution of the excess).

Decision of the Workers' Compensation Appeal Board, 2/23/16, at 11.

reimbursement from Employer. *See Olin Corp. (Plastics Div.) v. WCAB*, 324 A.2d 813 (Pa. Cmwlth. 1974) (recognizing subrogation is the right of a party who has made payment toward an obligation, which should have been paid by another, to be indemnified by the other.) Claimant and UEGF each appealed to the WCAB.

UEGF argued that Claimant was a "seaman" with his sole remedy available under the Jones Act. Having previously ruled on the question, the WCAB declined to revisit the issue. For his part, Claimant argued that the WCJ erred in ruling that Insurer correctly paid benefits under the Commercial Hull Policy and was ineligible for subrogation. The WCAB disagreed. It reviewed the terms of the Commercial Hull Policy and noted that the policy did not employ the same terminology present in the Jones Act. Specifically, by using the term "member of the crew" rather than "seaman" the policy at best created an ambiguity as to whether the terms were synonymous or not, and that any ambiguities must be resolved in favor of the insured. Thus, the WCAB held that, although Claimant was not a "seaman" under the Jones Act, he was a "member of the crew" under the Commercial Hull Policy, meaning that Insurer had correctly paid proceeds to Claimant under the policy. Therefore, the WCAB concluded Section 319 of the WCA, *see infra* note 10, precluded Insurer from seeking subrogation, and it affirmed the WCJ. Claimant sought review in the Commonwealth Court and Employer intervened.

Claimant argued that "the law of the case" doctrine should apply to preclude the WCAB's order from deviating from its previous determination that Claimant was not a "seaman." Because the terms "seaman" and "crewmember" are interchangeable, Claimant contended, the WCAB's decision is at odds with its earlier ruling. Employer responded that the WCAB did not reverse its earlier ruling, which had not specifically construed the "member of the crew" language of the Commercial Hull Policy. Accordingly, "the law of the case" doctrine would not apply. The court declined to invoke the law of

the case doctrine absent any authority indicating the doctrine is applicable to proceedings completely within the workers' compensation system.

Claimant next argued the WCAB's decision was not supported by substantial evidence because, inasmuch as his employment duties did not qualify him as a "seaman" under the Jones Act, he could not then be deemed a "crewmember." Employer countered that the terms are not the same, and the use of the term "crewmember" in the Commercial Hull Policy and not "seaman" must be deemed purposeful.

The Commonwealth Court reviewed pertinent case law construing the term "seaman" in the Jones Act as a mixed question of law and fact and concluded the terms "seaman" and "crewmember"- or "member of the crew" - are interchangeable. *Arlet v. Workers' Compensation Appeal Board*, 237 A.3d 615, 622-623 (Pa. Cmwlth. 2020) (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995); *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252 (3rd Cir. 1998); and *Hill v. Workmen's Compensation Appeal Bd. (Spirit of Phila.)*, 703 A.2d 74 (Pa. Cmwlth. 1997). Thus, the court held that because "the remedies under [the WCA and the Jones Act] are exclusive, the WCAB erred in concluding that Claimant was entitled to Jones Act maintenance and cure benefits and workers' compensation benefits for the same injury." *Id.* at 623. The court did not disturb the WCAB's underlying determination that Claimant was not a seaman for the purposes of the Jones Act. Notwithstanding its determination that Claimant's exclusive remedy lay with the WCA, the court affirmed the WCAB on the alternative grounds that "it is well settled that an insurer cannot subrogate against its own insured." *Id.* (citing *Keystone Paper Converters, Inc. v. Neemar, Inc.*, 562 F. Supp. 1046, 1048 (E.D. Pa. 1983); *Employers of Wausau v. Purex Corp.*, 476 F. Supp. 140, 142 (E.D. Pa. 1979); and *Remy v. Michael D's Carpet Outlets*, 571 A.2d 446, 447 (Pa. Super. 1990)).

**ISSUE ON APPEAL**

Claimant sought allowance of appeal, and we granted allocator to consider the following question.

> Did the Commonwealth Court of Pennsylvania err as a matter of law in its July 29, 2020 Opinion and Order when it affirmed the Workers' Compensation Appeal Board's finding that Acadia [Insurance Company] did not have a right to subrogation for benefits paid to [Claimant] under a Jones Act policy of insurance, despite the Commonwealth Court's initial holding in this case that [Claimant] was not a seaman and/or crewmember entitled to the benefits which [Insurer] should not have paid him?

*Arlet v. Workers' Compensation Appeal Board*, 255 A.3d 190, (Table) (Pa. 2021) (order granting allowance of appeal).

It is as well to note at the outset those issues that are not encompassed within the question accepted for review. As related in the factual and procedural history of this case, several determinations were made by the lower tribunals regarding whether Claimant's employment qualified him as a seaman under the Jones Act, and whether the Commercial Hull Policy was exclusively a Jones Act policy or provided additional coverage. Portions of the parties' briefs are devoted to defending or disputing the correctness of those holdings, but we note procedurally those issues are not before us and merely establish the law of the case, culminating in the critical determinations that a crewmember and seaman are synonymous for the purpose of the Jones Act and that both the Jones Act and workers' compensation law provide exclusive remedies. For our review of the narrower issue of the right of Insurer to seek subrogation against Employer, we accept that state of the case without revisiting the merits of those foundational determinations.[9]

---

[9] For example, in Section III-A of its brief, Flagship Niagara League argues the ambiguity of the policy language and questions the interchangeability of the terms "seaman" and "crewmember" to urge the position that the Commercial Hull Policy was not exclusively a Jones Act Policy. Additionally, in section C of its brief, the Bureau of Workers' Compensation argues Insurer is estopped from seeking subrogation based on its voluntary payment under the policy. These issues are not presently before us.

**PARTIES' ARGUMENTS**

Insurer submits that the authority relied upon by the Commonwealth Court in applying the general equitable prohibition against an insurer seeking subrogation against its insured involves factual circumstances that are materially distinct from the instant case, namely that the subrogation sought in this case is for payments made on a risk against which Insurer did not insure. The Commonwealth Court cited two United States District Court cases and a Pennsylvania Superior Court Case to support its general proposition that an insurer cannot subrogate against its insured, to wit, *Keystone Paper Converters, Inc., supra*; *Employers of Wausau, supra*; and *Remy v. Michael D's Carpet Outlets*, *supra*. However, Insurer points out the insurers in those cases sought subrogation for sums paid on risks for which they provided coverage. In *Keystone*, the insurer sought recovery from its own insured for payment it made on a covered risk. The *Keystone* court specifically held; "To permit the insurer to sue its own insured for liability covered by the insurance policy would violate ... sound public policy. Such action, if permitted would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured **on a risk insured against**." *Keystone*, 562 F. Supp at 1050-1051 (internal citations omitted) (emphasis supplied). Similarly, in *Employers of Wausau*, the insurer sought subrogation from its insured for payment it made on a covered risk in an automobile policy.

> Purex is the named insured in the policy; Purex paid the premiums for the coverage; and Purex had contracted with American Stevedoring to carry such insurance in connection with the operation of the vehicles. If Employers recovered in this subrogation action against Purex, **it would be reimbursed for the loss which Purex paid it premiums to cover**. To permit subrogation in this case would be a direct violation of the well-recognized rule of law that, in the absence of a clear and unequivocal understanding to the contrary, an insurer is not entitled to subrogation from its named insured.

*Employers of Wausau*, 476 F.Supp. at 143 (emphasis supplied).  The court in *Remy* recited *Keystone* and *Wausau*'s general principle that an insurer cannot recover through subrogation against its own insured in a case where it had been raised as a defense, but the court determined the party to whom the insurer made payment and from whom it sought subrogation was not, as had been alleged, an implied co-insured.  Accordingly, the court held the bar against subrogation from an insured for a covered risk did not apply.

By contrast, what this case presents is Insurer seeking subrogation for payment on a risk it did not insure against.  The lower tribunals' determinations established that Claimant was not a member of the crew, that the term "crewmember" is interchangeable with the term "seaman" for Jones Act interpretation and application, and the Jones Act and WCA remedies are mutually exclusive.  Therefore, Claimant is entitled to benefits under the WCA but not under the Jones Act.  Insurer notes that the Commonwealth Court has recognized a statutory right of subrogation by non-responsible insurance companies pursuant to Section 319 of the Workers' Compensation Act.[10]  *See Olin Corp*, *supra*.

---

[10] The Act provides as follows.

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents.  The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement.  Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be

Employer argues that the Commonwealth Court did not determine that Insurer should not have paid Claimant and that Insurer is seeking subrogation for payment made on a risk it covered. However, Employer supports its position by revisiting the use of the terms "member of the Crew" and "seaman" in the policy and Jones Act. Employer reasserts the holding of the WCAB, which the Commonwealth Court reversed, that the Commercial Hull Policy was more than a Jones Act policy based upon its use of the term "members of the crew." As noted above, this issue was settled to the contrary and is the law of the case for the purpose of this appeal. Employer also argues that the right of subrogation set forth in Section 319 requires reasonable diligence and that Insurer failed to affirmatively act in a reasonable time. Employers Brief at 24 (citing *Independence Blue Cross v. Workers' Comp. Appeal Bd. (Frankford Hosp.)*, 820 A.2d 868 (Pa. Cmwlth. 2003)).[11]

---

treated as an advance payment by the employer on account of any future instalments of compensation.

Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer **or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.**

77 P.S. § 671 (emphasis supplied).

[11] As noted earlier, the WCAB, argues issues that would come to the fore in the event the Commonwealth Court's decision regarding Insurer's right to seek subrogation is reversed. These include the distinct status of the UEGF vis-à-vis Employer relative to any subrogation claim, the role sovereign immunity may have on such a claim, and whether Insurer's voluntary actions in this matter should result in it being estopped from asserting

**Analysis**

Subrogation has its roots in equity and was envisioned as a means to place the ultimate burden of a debt on the primarily responsible party. *Prof'l Flooring Co., Inc. v. Buhsar Corp.*, 152 A.3d 292, 301 (Pa. Super. 2016), appeal denied, 170 A.3d 1036 (Pa. 2017). We have described a typical scenario of how subrogation arises in an insurance context as follows.

> Subrogation allows the subrogee [often an insurer] to step into the shoes of the subrogor [often the insured] to recover from the party that is primarily liable [often a third party tortfeasor] any amounts previously paid by the subrogee to the subrogor [instantly the amounts mistakenly paid under the Commercial Hull policy]. *See e.g. Ario v. Reliance Insur. Co.,* 602 Pa. 490, 980 A.2d 588, 594–95 (2009). As well-stated by the Superior Court,
>
> > [W]hen an individual who has been indemnified for a loss subsequently recovers for the same loss from a third party, equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while preventing the injured party from profiting a "double recovery" at the indemnifying party's expense.
>
> *Allstate Ins. Co. v. Clarke,* 364 Pa.Super. 196, 527 A.2d 1021, 1024 (1987).

*Jones v. Nationwide Property and Cas. Ins. Co.*, 32 A.3d 1261, 1270–71 (Pa. 2011).[12] As arising in this case, the subrogee, Insurer (Acadia), steps into the shoes of the subrogor, Claimant (Arlet), to recover its expenditures mistakenly paid to Arlet under the Commercial Hull policy issued to Employer (Flagship Niagara). Insurer (Acadia) seeks

---

it is a non-responsible party. We do not address these arguments, as they exceed the scope of the issue before us.

[12] This Court has noted that "[a]lthough originally a common law equitable doctrine, subrogation today may arise by statute or by virtue of an express agreement between parties, as well as through operation of common law equitable principles." *Thompson v. Workers' Compensation Appeal Board (USF&G Co. and Craig Welding & Equipment Rental)*, 781 A.2d 1146, 1151 (Pa. 2001).

through subrogation to receive any payments Employer, as the primarily responsible party, is due to pay Claimant by virtue of Employer's workers compensation obligation. It is this scenario that implicates the general equitable rule recognized by the Commonwealth Court that "[i]t is well settled that an insurer cannot subrogate against its own insured." *Arlet*, 237 A.3d at 623. The public policy supported by the general rule speaks of conflict of interest, and of apportionment of risk among those assuming the burden of such risk.

> The courts give various reasons for this rule. Some courts reason that in subrogation the insurer stands in the shoes of the insured and is not entitled to subrogation where the insured has no cause of action against a third party. *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.*, 418 F.Supp. 56 (N.D. Tex. 1976); *Midwest Lumber Co. v. Dwight E. Nelson Construction Co.*, 188 Nev. 308, 196 N.W.2d 377 (1972). Other courts have pointed out that the insurer accepts the risks under the policy in exchange for premiums, and it is not equitable that it be compensated by the insured for a loss paid out under the policy. *First National Bank of Columbus v. Hansen*, 84 Wis.2d 422, 267 N.W.2d 367 (1978); *Chenoweth Motor Co., Inc. v. Cotton*, 2 Ohio Misc. 123, 207 N.E.2d 412 (1965). Other courts have reasoned that it would be against public policy for the insurer to prevail in a subrogation action against its named insured. *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.*, 418 F.Supp. 56 (N.D. Tex. 1976); *Home Insurance Co. v. Pinski*, 160 Mont. 219, 500 P.2d 945 (1972)

*Employers of Wausau*, 476 F.Supp. at 143.

> This rule serves two purposes: (1) it prevents the insurer from passing the loss back to its insured, an act that would avoid the coverage that the insured had purchased; and (2) it guards against conflicts of interest that might affect the insurer's incentive to provide a vigorous defense for its insured.

*Continental Divide Ins. Co. v. Western Skies Management, Inc.*, 107 P.3d 1145, 1148 (Colo. App. 2004). Insurer is correct that the instant case has a critical distinguishing fact from the cases relied on by the Commonwealth Court in applying that general equitable rule. Unlike the cases cited by the Commonwealth Court, instantly Insurer's policy was

found not to cover Claimant's injury.  Insurer, therefore had not contracted to assume the risk of Claimant's injury.  This factual distinction highlights the limitation of the conflict of interest and apportionment of risk rationale expressed to justify the general rule.

Based on this distinction, other jurisdictions that apply the bar against an insurer seeking subrogation against its insured have recognized what has sometimes been termed a "no-coverage exception" to the rule.  In *Continental Divide Ins. Co.*, the Colorado Court of Appeals, set forth several circumstances where an insurer could recover against insured for payments made toward injuries not covered by the policy.

> An insurer may sue to recover payment made for bodily injury where a general liability policy excluded bodily injury to employees.
>
> An insurer may sue to recover payment made for damage caused by arson where a policy excluded intentional acts.
>
> An insurer may sue to recover payment made for damage caused by a subcontractor's negligence where a general contractor's policy covered subcontractors for property damage, but not liability.

*Id.* at 1148 (citations omitted)

Similarly, a New York appellate court held "[b]ecause the bodily injury to an employee exclusion in the general liability policy renders that policy inapplicable to the loss, the antisubrogation rule does not apply."  *Zahno v. Urquart*, 625 N.Y.S.2d 111, 112–13 (N.Y. App. Div. 1995).  Citing like cases, the California Court of Appeal explained this exception as follows:

> The rule illustrated by these cases prevents an insurer from equitably subrogating against an insured where the policy covers the insured for the particular loss or liability that the insurer seeks to impose on the insured.  If the policy does not cover the insured for a particular loss or liability, however, the insurer does not assume responsibility to the insured for the loss or liability, and it would not be inequitable for the insurer to impose the loss or liability on the insured.

*Truck Ins. Exch. v. Cty. of L.A.*, 115 Cal. Rptr. 2d 179, 186–87 (Cal. Ct. App. 2002).

As a matter of first impression for this Court, we conclude that the "no-coverage exception" to the general equitable rule precluding an insurer from pursuing subrogation against its insured comports with the purposes and public policy supporting the rule and hereby adopt it as the law of this Commonwealth. For example, the conflict of interest perceived to be present when an insurer seeks subrogation from an insured for a covered loss is not implicated where the loss is found not to be covered. The concerns expressed, as justification for precluding subrogation by an insurer against its insured, about apportionment of risk among those assuming the burden of such risk is similarly inapt where the insurer had not assumed any burden for the loss at issue.

Applying the exception to the instant case, given the finding below that Insurer's Commercial Hull Policy, a Jones Act policy, does not cover Claimant, because Claimant is not a "seaman" or crew member, and the finding that the WCA's exclusive remedy applies, Insurer is seeking subrogation for payment it made on a loss it did not cover. The fact that Insurer voluntarily made timely payments under its policy pending a determination of whether Claimant was in fact covered under the policy does not alter the rationale of either the general rule or the no-coverage exception. Subrogation claims may well be dependent on particular circumstances in their final analysis, but we conclude any equitable rule precluding an insurer from **seeking** subrogation against its insured is best tempered by the exception adopted herein today. Accordingly, we reverse that portion of the Commonwealth Court's decision affirming the WCAB on its stated alternate grounds, and remand for further proceedings consistent with this decision.[13]

---

[13] As noted earlier, Appellee Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Workers' Compensation addressed in its brief more specialized issues pertaining to whether the UEGF may be subject to subrogation, including sovereign immunity. As a consequence of the Commonwealth Court's decision, these issues had not been reached below. Nothing in this decision should be construed as

Chief Justice Baer and Justices Todd, Donohue, Dougherty and Wecht join the opinion.

Former Justice Saylor did not participate in the decision of this matter.

---

opining on the merits of those issues or as precluding them being raised in due course on remand.